ALBERT GARNEAU, PROSECUTOR, v. FRANK H. EGGERS, JUDGE OF THE FIRST CRIMINAL COURT OF THE CITY OF JERSEY CITY, AND THE MAYOR AND ALDERMEN OF JERSEY CITY, A MUNICIPAL CORPORATION, DEFENDANTS.

Argued May 1, 1934—Decided August 14, 1934.

246

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutor, *Riker & Riker* (*Theodore McC. Marsh,* of counsel).

For the defendants, *James A. Hamill* (*Charles Hershenstein,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J.   The prosecutor, Albert Garneau, was convicted in the First Criminal Court of Jersey City of a violation of section 2 of an ordinance of Jersey City entitled "An ordinance regulating the vehicular traffic upon certain roadways or highways in the city of Jersey City," adopted by the board of commissioners of Jersey City on November 21st, 1933, and approved by the commissioner of motor vehicles, pursuant to the statute, on November 22d, 1933.

Section 2 of the ordinance reads:   "It shall be unlawful for the driver of any commercial vehicle, as herein defined, to use, travel upon or traverse the highway known as the 'Pulaski highway' within the corporate limits of the city of Jersey City."

For convenience we shall herein refer to this highway as the "skyway," by which name it is most generally known.

In general the record shows that the skyway was opened to public travel on November 24th, 1932.   Immediately

thereafter accidents became frequent and increased in their severity. All were accompanied by property damage, mostly by serious personal injuries, and five persons were killed between November 24th, 1932, and November 21st, 1933, the date upon which the ordinance was adopted. The police department of Jersey City, through its chief of police and its traffic bureau, made complete surveys of conditions existing upon the skyway with a view of making the same safe for vehicular traffic. Measure after measure was adopted; experienced traffic policemen were assigned to duty; the motorcycle squad augmented, and several intensive drives and many prosecutions against traffic violators were instituted requiring the personal appearance of offenders before the traffic courts. All without avail. The accidents continued and even during the last intensive effort before the ordinance was adopted one traffic officer was killed and two police officers very seriously and permanently injured. The skyway is a connecting link of that portion of route 25 which extends from the opening of the Holland tunnel in Jersey City to the Tonnele Circle, with that portion of route 25 which runs through Newark, Elizabeth and various cities of the state. It created special conditions differing from any other in Jersey City. Prior to the adoption of the ordinance many thousands of commercial vehicles made constant use of the highway. Many trucks traveled slowly on the right-hand side of the skyway, and, where there was a rising grade, at not more than four miles an hour, with the result that fast-moving motor vehicles, particularly fast-moving commercial vehicles, often overtook the slow-moving commercial vehicles. By reason of the width and size of the commercial bodies the overtaking vehicle would pass over or beyond the center line of the highway in the path of oncoming vehicles driven in the opposite direction causing the oncoming vehicles to swerve from their straight line of travel. This created serious danger and numerous serious accidents resulted causing much concern to the mayor and commissioners of Jersey City. Suggestions were solicited; conferences were had with state and county officials. Various plans were examined over

a period of six or seven months. It was ascertained that almost eighty per cent. of the accidents was due to the presence of commercial vehicles upon the skyway; that between eleven per cent. and seventeen per cent. of the entire traffic consisted of commercial vehicles. With these facts before them, the city commissioners found that special circumstances existed along the skyway which needed regulation of a definite nature in order to protect the safety and lives of the community, and they determined that the only feasible plan to minimize and practically eliminate such accidents upon the skyway was by the passage of the ordinance under review, and the soundness of their judgment seems to be demonstrated by the fact that since the enforcement of the ordinance there has occurred only four accidents, all of a minor character.

The prosecutor at the time of his conviction was engaged in interstate commerce. As we shall hereafter point out the effect of the ordinance was merely to reroute commercial vehicles.

The prosecutor attacks the ordinance for reasons now to be considered.

First, he contends that the ordinance is unconstitutional because it deprives him of the equal protection of the laws as guaranteed by the fourteenth amendment and unlawfully and arbitrarily interferes with interstate commerce.

We think such contention is not well founded.

Both the United States Supreme Court and the courts of our own state have long recognized the right of states to regulate and control their highways under what is termed the "police power." The fourteenth amendment does not deprive the state of its exercise of police power, so long as such power is exercised in a manner having reasonable relation to the end in view and not arbitrarily.

If the ordinance in question is properly within the police power of the state, the court will not interfere.

The regulation of motor vehicles on particular streets, even to their complete exclusion therefrom, when deemed necessary in the public interest, is within the police power delegated to

municipalities, and, even though such regulation may be considered drastic in its operation, a court is not at liberty to substitute its judgment for that of a municipality as to the best and most feasible manner of curing traffic evils and traffic congestion in a specific area, in the interests of the welfare of the inhabitants and the persons who use the highway, where, as here, such regulation bears a direct relationship to the public safety and is reasonable and not arbitrary. *West* v. *Asbury Park,* 89 *N. J. L.* 402; *People's Rapid Transit Co.* v. *Atlantic City,* 105 *Id.* 286; *affirmed,* 106 *Id.* 587.

The same rule prevails when some of the persons affected are engaged in interstate commerce. It is the undoubted right of the state to protect its citizens and property, although the exercise of this right by the state may incidentally or remotely affect the right to engage in interstate commerce.

But the prosecutor insists that the ordinance is unconstitutional because it arbitrarily and unlawfully interferes with interstate commerce. The cases upon which he relies do not support his argument, but on the contrary support the ordinance. Thus *Michigan Public Utilities Commission* v. *Duke,* 266 *U. S.* 570, recognizes that a state has power to impose upon interstate commerce within its borders conditions or regulations which are necessary and do not pass beyond the bounds of what is reasonable and suitable for the proper use of its powers in the field that belongs to it. Again in *Buck* v. *Kuykendall,* 267 *Id.* 307, it is recognized that it is within the state's police power to pass an ordinance, the primary purpose of which is regulation with a view to safety of the highways.

Here the ordinance of Jersey City, as we point out, regulates the use of the highway in the interests of public safety, and so cannot be held to be an unreasonable burden or unreasonable restraint upon interestate commerce. If the ordinance sought to prevent competition or discriminated against owners of commercial vehicles who were engaged in interstate commerce, in favor of owners or vehicles engaged merely in intrastate commerce the prosecutor would be in a position to complain; but such is not the case. The ordi-

nance was designed to cure a serious situation which had arisen and which directly affected the general safety and welfare of the community, and can in nowise be considered as an attempt to place an unreasonable burden upon or create unjust discrimination against interstate commerce. In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles, those moving in interstate commerce as well as others. *Buck* v. *Kuykendall, supra; Hendrick* v. *Maryland,* 235 *U. S.* 610; *People's Rapid Transit Co.* v. *Atlantic City, supra.* The prosecutor does not point out any federal legislation which deprives the state, or the municipality in this instance, of the right to exercise this power in the general public interests. The argument that if this ordinance is valid all commercial vehicles may be excluded from all the highways in New Jersey is fallacious. Every regulation must be tested by the facts which exist in a particular locality.

Next it is argued that "the ordinance is void because it defeats the purposes for which the federal government made its contribution" to the cost of the skyway.

We think not.

The contribution made under the "Federal Aid Road act" was for the purpose of defraying a portion of the cost of the bridges which were constructed over the Hackensack and Passaic rivers to carry the skyway; but this contribution, in the absence of legislation by congress does not prevent Jersey City from adopting an ordinance, as here, regulating traffic on such skyway, which regulation is necessary for the public safety and welfare, and which is reasonable and non-discriminatory, and applicable to all commercial vehicles. *Morris* v. *Duby,* 274 *U. S.* 135.

Next the prosecutor insists that Jersey City had not the power to pass the ordinance.

We think it had.

The ordinance was passed pursuant to article 16 of chapter 281 of the laws of 1928, commonly referred to as the "Vehic-

ular Traffic act." This article empowers cities and municipalities to pass ordinances regulating special conditions existent in such municipalities, and under subdivision B of the subjects, among others, upon which the ordinances may be enacted is the "limiting of the use of streets to certain class of vehicles." We have already pointed out that the regulation of motor vehicles on particular streets, even to their complete exclusion, when deemed necessary to the public interest, is within the police power delegated by this section. *West* v. *Asbury Park, supra; People's Rapid Transit Co.* v. *Atlantic City, supra.*

It is further provided in section 2 of article 16 that all ordinances passed under provision of the act shall not be in force and effect until the same have been submitted to the commissioner of motor vehicles and approved by him after he has satisfied himself that such ordinances are not contrary to the provisions of the act and are not in excess of the powers and authority granted under this section. The ordinance in question was approved on November 22d, 1933, by the commissioner of motor vehicles.

The word "streets" is defined (page 723) "same as highway," and highway is defined on page 722 as "every way or place of whatever nature open to the use of the public as a matter of right for the purposes of vehicular travel." The skyway is therefore a street within the definition of the act and is the proper subject-matter for municipal legislation, provided special conditions existed which required regulating. An analysis of the testimony abundantly discloses that special conditions existed upon the skyway which made regulation imperative. These special conditions may be summarized as follows: (1) The unusually large volume of traffic and the continued flow thereof, which makes this skyway the most congested area in the whole state; (2) the skyway has no cross streets intersecting it; (3) the accident experience on the skyway in Jersey City was greater than in any other part of the state; (4) the grade upon the skyway necessitated a reduction of speed on the part of the slow-moving commercial trucks with the result that there was a

continuous overtaking of the slow-moving vehicles by the fast-moving commercial trucks causing the overtaking vehicles to pass beyond the center of the road, thus creating a constant menace to traffic coming in opposite directions; (5) an inability to regulate traffic, regardless of the number of police officers which may be used for that purpose.

Lastly it is argued that the ordinance is unreasonable and discriminatory.

We think it is not. While the ordinance, by its terms, eliminates commercial vehicles from the skyway, the effect thereof is merely to reroute commercial vehicles from the skyway to the Lincoln highway which has a distinct and separate traffic lane for east-bound and west-bound traffic, by reason of the fact that it is bisected along its entire center by the trolley tracks of the Public Service Co-ordinated Transport, which route is only about half a mile longer than the skyway route and normally requires about four minutes more time, and is well designed to accommodate all kinds of motor vehicles and to avoid the evils which the ordinance in question was designed to avoid.

It is further argued in this connection that the ordinance is unreasonable because it eliminates all commercial vehicles, regardless of their weight, size or speed. The answer to this objection lies in the fact that the officials who considered this matter and weighed the question before the ordinance was adopted reasonably concluded that the best means of curing the serious situation which had arisen was by the rerouting of all commercial vehicles. It was their judgment that the presence of commercial vehicles regardless of their size, speed, weight and load was the cause of eighty per cent. of the accidents. They considered that it would be well nigh impossible to so classify the commercial vehicles of to-day so as to say that some of this or that type should be permitted while some of another type should be prohibited. Their character differs in direct proportion to their number. Their body, their height, their width, their speed, their load capacity may well be considered to render classification impossible when an effort is made to eliminate the traffic evil

which existed on the skyway. It was for that reason that no specifications were undertaken to classify the commercial vehicle which should or should not be permitted to travel along the skyway. It seems evident that the considered judgment of the officials of the municipality respecting this phase of the case should not be disturbed. *Peoples Rapid Transit Co.* v. *Atlantic City, supra.*

The judgment of conviction will be affirmed, with costs.