44 N.J. Super. 327 (1957)
130 A.2d 407
NEW JERSEY HIGHWAY AUTHORITY, PLAINTIFF,
v.
ERNEST DRENTH, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 25, 1957.
*328 Mr. Walter Goldberg, attorney for plaintiff.
BROADHURST, J.S.C.
The Legislature in 1952 passed an act known and cited as "`The New Jersey Highway Authority Act'" (N.J.S.A. 27:12B-1 et seq.). This act created a body corporate and politic, to be known as the "`New Jersey Highway Authority'" (N.J.S.A. 27:12B-4). The Authority was authorized (a) to construct, maintain, repair and operate a project to be known as "The Garden State Parkway" beginning in Paramus and ending near Cape May (N.J.S.A. 27:12B-20); and (b) to construct, maintain, repair and operate any "feeder road * * * which in the opinion of the Authority will *329 increase the use of a project * * *" (N.J.S.A. 27:12B-5(p)). The legislative definition of "feeder road" as used in the act "means any road which in the opinion of the Authority is necessary to create or facilitate access to a project" (N.J.S.A. 27:12B-3(g); italics ours).
The Garden State Parkway was built and has, for some time, been in operation between Cape May and Paramus. Under the authority of the Legislature of New York a toll road was built extending from Albany to a point on the New Jersey State boundary line, in the Borough of Montvale, New Jersey.
On December 15, 1955 the Authority adopted Resolution 1955-95, pursuant to N.J.S.A. 27:12B-1 et seq., determining "that a feeder road between the northerly terminus of Section 1 of the Garden State Parkway in Paramus and the New York State boundary line will, in the opinion of the Authority, increase the use of the Garden State Parkway project, and is necessary to create or facilitate access to the said project"; that this road, connecting with the New York Thruway, as part of the Garden State Parkway project is "to be known as Thruway Feeder Road."
The lands of the defendants lay in the path of the "Thruway Feeder Road" and on February 23, 1956 the said defendants entered into a "Right of Entry Permit" with the Authority. Under this permit defendants granted to the Authority "an irrevocable right to enter upon the lands * * * in order to carry out the construction program of the Authority, including * * * surveys, clearing, grading, drainage, demolition of existing structures, and the erection of new structures or other improvements." As a consideration for the permit the Authority agreed to promptly negotiate with defendants "looking to a settlement, based upon a fair and just price to be paid to the Owner (defendants)." Interest on the agreed price at 6% per annum was to be paid from the date of the permit and "the value and payment for the property, whether by contract or condemnation, shall be fixed and determined as of the date of this agreement" (par. 6).
*330 Although there is no proof before me, it was stated on the oral argument and in the brief, that the Authority took possession of defendants' lands, proceeded with the financing of the project and entered into contractual undertakings for the construction of the "feeder road."
Not being able to agree with the defendants "upon a fair and just price" for their lands, the Authority filed a complaint to condemn them (N.J.S.A. 27:12B-5(l)). On September 28, 1956 an order was entered in this court requiring the defendants to show cause, on November 2, 1956, why judgment should not be entered appointing condemnation commissioners. On the return day of this order, the defendants, for the first time, raised the questions which must be determined by this decision. Orders of continuance were entered to afford counsel time to file briefs and the matter was finally argued on March 22, 1957.
A preliminary question is raised by the defendants. They contend that "a factual question exists whether the within described project is a `feeder road' within the contemplation of the Statutes relied upon by the Authority," and that this court "must hear testimony and opinion of experts, consider the facts and take judicial notice of the area in question in order to determine whether in fact, a bona fide "feeder road' exists * * *."
There is no ambiguity, in my opinion, in the language and intent of this statute and it is neither necessary nor permissible to take testimony as suggested by the defendants.
The fundamental question raised by the defendants is whether the road from Paramus to Montvale is a "feeder road" within the intent of the Legislature as expressed in "The New Jersey Highway Authority Act." The defendants say that the statute does not give "any authority * * * to construct a road, or to continue the highway from the peripheral area of Paramus, in an eastward direction toward the New York line." That "there is a complete absence of authority, or jurisdiction, for such a project."
"This act, being necessary for the welfare of the State and its inhabitants shall be liberally construed to effect the *331 purposes thereof" (N.J.S.A. 27:12B-24) admonishes the Legislature.
The intention of the Legislature is to be derived from a view of the whole and of every part of the statute, taken and compared together. The real intention, when ascertained, will prevail over the literal sense of terms. The intention is to be collected from the context and the occasion and necessity of the law and from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good discretion. No construction should be adopted which will substantially frustrate the objects of the act. A case not within the letter of a statute may be held to be within its meaning because it is within the mischief for which a remedy is provided. Pine v. Okzewski, 112 N.J.L. 429 (E. & A. 1934); Hackensack Water Co. v. Ruta, 3 N.J. 139 (1949).
That the road from Paramus to Montvale is a "feeder road" within the intent of the Legislature, in my opinion, is clear and I so hold.
The next and only other point raised by the defendants is that the Legislature violated constitutional limitations in that it delegated its exclusive power to the "Authority" without any or adequate standards. In Ward v. Scott, 11 N.J. 117 (1952), at pages 122 to 125, Justice Jacobs treats this question fully and refers to the many statutory standards, both federal and state, which have been constitutionally upheld although at least as general in terms as in the case at bar. This holding has been approved and another example added thereto in the recent case of Laba v. Newark Bd. of Education, 23 N.J. 364, 385 (Feb. 4, 1957).
Therefore this court holds that there is an adequate standard in this act.
The plaintiff raises the defense of estoppel arising out of (1) the failure to attack Resolution 1955-95 directly and promptly; (2) the entering into the permit agreement; and (3) standing by and watching the road being constructed *332 over their lands without protest. In view of the holding above, any decision on this question becomes academic and is therefore not made.
The objections urged by the defendants are dismissed and the condemnation commissioners should be appointed. Appropriate orders in the three cases, approved as to form, are to be submitted within ten days.