81 N.J. Super. 452 (1963)
195 A.2d 913
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HERBERT HUBSCHMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Middlesex County Court, Law Division.
Decided December 3, 1963.
*454 Mr. Morris Yamner argued the cause for plaintiff-respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. Morris Brown argued the cause for defendant-appellant (Messrs. Wilentz, Goldman & Spitzer, attorneys).
HALPERN, A.J.S.C.
Defendant appeals from a conviction in the Woodbridge Township Municipal Court where he had been charged with violating Article 1.1.3 of the regulations promulgated by the New Jersey Highway Authority in that he had backed up his car on the Garden State Parkway. The appeal is here de novo and the relevant facts have been stipulated.
On May 22, 1963 defendant entered the Parkway at a point where there was no toll booth. Before reaching a toll booth he was given a traffic summons for backing his car on the Parkway. He admits backing his car on the Parkway but contends his conviction should be reversed because: (a) The regulation against backing up is unenforceable in that the power delegated by the Legislature to the Authority to make *455 regulations is unconstitutional as an unlawful delegation of power, and (b) if the Authority had the power to promulgate the regulation in question it nevertheless failed to erect any signs or otherwise post them so as to give notice thereof to the travelling public as required by law.
A brief recital of the legislative history dealing with the New Jersey Highway Authority is necessary to an understanding of the issues involved.
In 1952 the Legislature created the New Jersey Highway Authority. N.J.S.A. 27:12B-1 et seq. Under this legislation the Authority was given very broad power to acquire, construct and maintain, modern express highways in order to facilitate vehicular traffic and minimize hazards on congested highways in the state. It authorized the Authority "To establish and enforce rules and regulations for the use of any project" N.J.S.A. 27:12B-5(j). This power to establish and enforce rules was by no means unlimited. The Legislature set appropriate standards to guide the Authority. The standards particularly involved in the instant case are contained in N.J.S.A. 27:12B-18. Subsection (g) specifically provides:
"All persons operating vehicles upon any project, or seeking to do so, must at all times comply with regulations, not inconsistent with the other sections of this act, adopted by the Authority concerning types, weights and sizes of vehicles permitted to use such project, and with regulations adopted by the Authority for or prohibiting the parking of vehicles, concerning the making of turns and the use of particular traffic lanes, together with any and all other regulations adopted by the Authority to control traffic and prohibit acts hazardous in their nature or tending to impede or block the normal and reasonable flow of traffic upon such project; provided, however, that prior to the adoption of any regulation for the control of traffic on any such project, including the designation of any speed limits, the Authority shall investigate and consider the need for and desirability of such regulation for the safety of persons and property, including the Authority's property, and the contribution which any such regulation would make toward the efficient and safe handling of traffic and use of such project, and shall determine that such regulation is necessary or desirable to accomplish such purposes or one or some of them, and *456 that upon or prior to the effective date of any such regulation and during its continuance, notice thereof shall be given to the drivers of vehicles by appropriate signs erected at the roadside or otherwise posted. The Authority is hereby authorized and empowered to make, adopt and promulgate regulations referred to in this section in accordance with the provisions hereof. Regulations adopted by the Authority pursuant to the provisions of this section shall insofar as practicable, having due regard to the features of the project and the characteristics of traffic thereon, be consistent with the provisions of Title 39 of the Revised Statutes applicable to similar subjects. The authority shall have power to amend, supplement or repeal any regulation adopted by it under the provisions of this section. No regulation and no amendment or supplement thereto or repealer thereof adopted by the Authority shall take effect until it is filed with the Secretary of State, by the filing of a copy thereof certified by the secretary of the Authority."
Thereafter the Authority decided to build the Garden State Parkway and duly finished it during the year 1955. On October 1, 1958 the Authority promulgated its regulations governing the use of the Parkway and filed the same with the Secretary of State, as required by Subsection (g), supra.
The regulation here in question, Article 1.1.3, provides:
"No vehicle shall be operated, backed, pushed or otherwise caused to move in a direction which is against the normal flow of traffic on any traffic lane, deceleration lane, acceleration lane, access ramp, shoulder or other roadway on the Parkway."
No one will seriously dispute the fact that this regulation is reasonable and necessary. Any motorist backing up his vehicle on a roadway with a 60-mile per hour speed limit is clearly a menace to himself and others lawfully upon the road.
I take judicial notice of the fact that the Parkway is about 173 miles long, with about 120 entrances along its sides. Admittedly no signs are erected along the roadside of the Parkway to notify drivers of the provisions of Article 1.1.3. The Authority has promulgated 20 regulations and 36 specific prohibitions which, in addition to being filed with the Secretary of State, can be obtained in printed form by any person by writing the Authority, by a driver asking for a copy at any of the 21 toll booths on the Parkway. In addition, *457 all the regulations are displayed at all of the rest areas on the Parkway, and the prohibition against backing up is printed on the Garden State Parkway Map which is also available to all drivers at all toll booths.
With the above background I turn to the legal issues presented by the defendant. Unquestionably the Legislature has the constitutional power to create administrative agencies, including highway authorities. New Jersey Highway Authority v. Drenth, 44 N.J. Super. 327 (Law Div. 1957). The courts, in fact, look favorably upon the power given such agencies to promulgate rules in furtherance of the purposes for which they have been created. Cammarata v. Essex County Park Commission, 26 N.J. 404 (1958).
It is equally well established that the Legislature may constitutionally delegate to the Authority the power to promulgate the rule here in question provided appropriate standards are set forth in the enabling law. Van Riper v. Traffic Telephone Workers' Federation of New Jersey, 2 N.J. 335 (1949); Ward v. Scott, 11 N.J. 117 (1952); Laba v. Newark Board of Education, 23 N.J. 364 (1957).
A reading of the applicable provision of N.J.S.A. 27:12B-18 clearly shows that the rule-making power of the Authority is well circumscribed by definitive standards to guide the Authority and thus satisfy all constitutional requirements.
The narrow issue remaining is whether the regulations were properly promulgated in accordance with N.J.S.A. 27:12B-18(g), which requires that notice of such regulations "shall be given to the drivers of vehicles by appropriate signs erected at the roadside or otherwise posted."
In construing a portion of a statute a court will seek an interpretation that is consistent with the intent of the Legislature as revealed by the contents of the entire legislation on the subject, and will attempt not to reach an absurd or impractical result. Robson v. Rodriguez, 26 N.J. 517 (1958).
So, too, a statutory construction calling for unreasonable results should be avoided where reasonable results consistent *458 with the indicated purpose of the act as a whole are equally possible. Clifton v. Passaic County Bd. of Taxation, 28 N.J. 411 (1958).
I am of the opinion that the Legislature imposed the duty on the Authority, by virtue of the provision here in issue, to take the necessary steps to give the users of the Parkway a reasonable opportunity to acquire knowledge of the regulations. Defendant argues this can only be done by erecting signs setting them forth. If one agreed with this argument, where would the Authority erect such signs? Would it be sufficient to erect them on the extreme terminus points of the Parkway? If so, how would the motorist who gets on the Parkway at any other point acquire notice? Would you erect them at every entrance to the Parkway? This would not only be highly impractical but it would be a mere pro forma compliance because it is highly improbable anyone would stop to read them  if motorists did stop very serious traffic hazards would result.
When the Legislature required the Authority to give notice by "signs erected at the roadside" it left it to the Authority's discretion to determine what signs could be and reasonably should be so erected. It obviously did not mean that all the regulations, dealing as they do with a great variety of subjects, should be placed on a sign or signs along the roadside. As a consequence I take judicial notice of the fact that there are intermittent signs along the roadside of the Parkway dealing with individual regulations strategically placed so as to inform motorists of their contents. Examples of such signs are those giving speed limits  directing motorists to keep to the right except when passing, and prohibiting "U" turns.
What did the Legislature mean by the words "or otherwise posted"? Coming as it does in the same sentence requiring "appropriate signs erected at the roadside," it obviously meant posted by means other than by signs erected at the roadside. I have concluded that it means giving the public the information about the regulations other than by erecting *459 signs. I therefore find that the Authority has complied with the statutory requirement of "otherwise posted" by making the regulations available to motorists as previously indicated.
In 1962 the Legislature created another administrative agency known as the New Jersey Expressway Authority. N.J.S.A. 27:12C-1. Sections 27:12C-11 and 27:12C-37(G) of said act also give that authority the power "to establish rules and regulations," and provide that "notice thereof [should] be given to the drivers of vehicles by appropriate signs erected at the roadside or otherwise posted." This was done by the Legislature with full knowledge of the fact that the New Jersey Highway Authority had been given exactly the same rule-making power, and that in exercising this power the rules promulgated were not shown on signs erected at the roadside but rather were "otherwise posted" by the means heretofore described.
It is a well recognized principle of law that the practical construction of a statute by an administrative agency over a period of years without interference by the Legislature is evidence of its conformity with the legislative intent and strongly inclines the courts to concurrence therein. Walsh v. Dept. of Civil Service, 32 N.J. Super. 39 (App. Div. 1954), Lane v. Halderman, 23 N.J. 304 (1957). It is equally well established that where statutory language can be construed in several ways, long-continued usage and practice under it requires the construction put on it by the administrative agency as the proper one. Presbyterian Church of Livingston v. Division of Alcoholic Beverage Control, 53 N.J. Super. 271 (App. Div. 1958), certification denied 29 N.J. 137 (1959). This is particularly true where the point is res nova in our courts. Essex County Retail Liquor Stores Ass'n v. Municipal Board of Alcoholic Beverage Control of City of Newark, 64 N.J. Super. 314 (App. Div. 1960).
It can reasonably be assumed therefore that the 1962 Legislature agreed with and approved of the New Jersey Highway Authority's interpretation of the term "otherwise posted," *460 since it made no change in the act creating the New Jersey Expressway Authority.
I therefore find the defendant guilty of the offense with which he is charged and impose a fine of $10 plus $5 costs.
Counsel for the State will present an appropriate order.