110 N.J. Super. 520 (1970)
266 A.2d 171
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROLAND J. ERNST, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Camden County Court.
Decided June 11, 1970.
*521 Mr. Andrew A. Klepka for the appellant (Messrs. Turnbull and Klepka, attorneys).
Mr. Alexander Feinberg for respondent.
Mr. Anthony Bezich, Assistant Prosecutor, appeared on behalf of A. Donald Bigley, Camden County Prosecutor.
MARIANO, J.S.C.
Defendant appeals from a conviction in the Municipal Court of the Township of Winslow, Camden *522 County, where he was charged with violating article 3.3(b) of the regulations promulgated by the Atlantic City Expressway Authority, in that he did, on or about August 12, 1968, operate his motorcycle on the said expressway. The trial here is de novo.
Defendant admits having operated his motorcycle on the expressway but contends that his conviction should be reversed because the regulation is unconstitutional in that (1) it is beyond the statutory power granted to the Expressway Authority; (2) it violates the 14th Amendment of the U.S. Constitution in that it abridges the privileges and immunities of citizens and denies to defendant equal protection of the laws; (3) the regulation is oppressive and discriminatory, and (4) it is arbitrary, capricious and unreasonable in that it bears no relationship to the public safety.
A brief recital of the legislative history dealing with the Atlantic City Expressway is not only necessary to a proper understanding of the issues involved but will also serve a useful purpose.
In 1962 the Legislature adopted the New Jersey Expressway Authority Act, N.J.S.A. 27:12C-1 et seq. Section 4 of the act created the Atlantic City Expressway Authority, which operates the Atlantic City Expressway. The Authority was given broad powers to acquire, construct and maintain a modern express highway in order to facilitate vehicular traffic and minimize hazards on congested highways in the State. N.J.S.A. 27:12C-2. The Authority is authorized "to establish rules and regulations for the use of any project." N.J.S.A. 27:12C-11(i).
On or about July 1, 1964 the Authority promulgated and adopted rules and regulations governing the use of the Expressway. This initial set of regulations contained no prohibition against the use of motorcycles on the Expressway. Thereafter, in May 1967, the rules and regulations were revised so as to totally prohibit the use of motorcycles on *523 the Expressway. Such prohibition is contained in article 3.3(b) of the regulations and reads as follows:

3.3 Restricted Vehicles
The following vehicles are prohibited at all times from using the Expressway.
a. * * *
b. Bicycles, with or without motors, motor scooters and motor cycles.

I
Defendant initially alleges that his conviction should be reversed because the regulation prohibiting the use of motorcycles on the Expressway is unconstitutional as being beyond the statutory power granted the Authority. A similar contention was raised in State v. Hubschman, 81 N.J. Super. 452 (Cty. Ct. 1963), where defendant challenged the authority of the New Jersey Highway Authority (Garden State Parkway) to regulate the backing-up of motorists on the Parkway. The court upheld the rule-making powers of the Highway Authority with regard to the activities of motorists on that roadway since such powers had been adequately circumscribed by standards set down by the Legislature. The court said:
* * * Unquestionably the Legislature has the constitutional power to create administrative agencies, including highway authorities. The courts, in fact, look favorably upon the power given such agencies to promulgate rules in furtherance of the purposes for which they have been created.
It is equally well established that the Legislature may constitutionally delegate to the Authority the power to promulgate the rule here in question provided appropriate standards are set forth in the enabling law. [at 457]
A reading of the applicable provision of N.J.S.A. 27:12C-37 clearly shows that the powers of the Atlantic City Expressway Authority are well circumscribed by definitive standards to guide it in its rule-making capacity and thus satisfy constitutional requirements concerning the delegation of powers.

*524 II
Defendant also argues that his conviction should be reversed on the ground that the said regulation violates the 14th Amendment to the U.S. Constitution in that it abridges the privileges and immunities of citizens and denies to the defendant the equal protection of the laws. This contention is not well founded. Our former Supreme Court was presented with a factual situation similar to the one presently before this court in the case of Garneau v. Eggers, 113 N.J.L. 245 (1934), wherein it upheld a Jersey City ordinance which prohibited the use of commercial vehicles on the Pulaski Skyway where it passed through that municipality. In upholding the ordinance the court found a justification for the exclusion of commercial vehicles based upon that municipality's police power to safeguard the welfare of its inhabitants by the curing of traffic evils within the municipality. In defining the extent of the police powers of the State and municipalities in this area, the court stated:
* * * The Fourteenth Amendment does not deprive the state of its exercise of police power, so long as such power is exercised in a manner having reasonable relation to the end in view and not arbitrarily.

* * * * * * * *
The regulation of motor vehicles on particular streets, even to their complete exclusion therefrom, when deemed necessary in the public interest, is within the police power delegated to municipalities, and, even though such regulation may be considered drastic in its operation, a court is not at liberty to substitute its judgment for that of a municipality as to the best and most feasible manner of curing traffic evils and traffic congestion in a specified area, in the interest of the welfare of the inhabitants and the persons who use the highway, where, as here, such regulation bears a direct relationship to the public safety and is reasonable and not arbitrary. [at 248-249]
A reading of the New Jersey Expressway Authority Act, N.J.S.A. 27:12C-1 et seq., amply demonstrates that the Legislature has delegated sufficient police powers to enable the Authority to carry out the purposes for which it was created.

*525 III
Defendant's contention that article 3.3(b) is oppressive and discriminatory is without merit. While the regulation, by its terms, eliminates motorcycles from the Expressway, the effect thereof is merely to reroute motorcycles to other available roadways. Garneau v. Eggers, supra, at 252.

IV
N.J.S.A. 27:12c-37(G) contains the standards designed to guide the Authority in the use of the limited police power delegated to it. The applicable portion of that section states:
* * * that prior to the adoption of any regulation for the control of traffic on any such project, including the designation of any speed limits, the authority shall investigate and consider the need for and desirability of such regulation for the safety of persons and property, including the authorities property, and the contribution which any such regulation would make toward the efficient and safe handling of traffic and use of such project, and shall determine that such regulation is necessary or desirable to accomplish such purposes or 1 or some of them. * * * [Emphasis added]
Thus, the court is brought to defendant's final ground for reversal of his conviction, namely, that article 3.3(b) is arbitrary, capricious and unreasonable in that it bears no relationship to the safety of persons using the Expressway. Defendant bases this argument on the fact that the Authority, contrary to the standards imposed upon the exercise of its powers by N.J.S.A. 27:12C-37(g), has failed to follow the statutory mandate to "investigate and consider the need for and desirability of such regulation" and thus cannot now demonstrate what contribution, if any, the exclusion of motorcycles would make toward the efficient and safe handling of traffic on such project and the safety of other users of the highway. Defendant's position is not primarily based upon the Authority's procedural failure to follow the guidelines contained in N.J.S.A. 27:12C-37(g), *526 but rather on the fact that the Authority's failure to investigate and consider the need for such a regulation demonstrates a substantive lack of relationship between the banning of motorcycles on the Expressway and the safety of persons using that roadway.
The only evidence produced by the Authority to show the relationship of the regulation in question to the public safety was testimony concerning a report prepared for the Garden State Parkway concerning the prohibition of motorcycles on that roadway, and a letter, written by Lieutenant Kloo of the N.J. State Police Barracks assigned to the Atlantic City Expressway, addressed to the Expressway Authority.
This court finds that such evidence is insufficient to clearly demonstrate an adequate connecting relationship between the banning of motorcycles and the public safety. The use of the Garden State Parkway report, which recommended the exclusion of motorcycles from the Parkway, to justify the prohibition of motorcycles on the Atlantic City Expressway, seems a rather inadequate effort on the part of the Authority to carry out its responsibility under N.J.S.A. 27:12C-37(g) to "investigate and consider the need for and desirability of such regulation" before putting that regulation into effect. The said report was prepared seven years prior to the date the Authority adopted article 3.3(b) and deals with a completely different roadway, with different characteristics and mileage. Further, it was noted in that report that there was no way of relating the number of motorcycle accidents to the number of motorcycles using the Garden State Parkway.
The legal efficacy of Lieutenant Kloo's letter as a basis upon which to adopt a regulation excluding motorcycles is also of doubtful value, considering the fact that it was based on his personal beliefs and observations rather than empirical data.
Considering the testimony presented at this de novo proceeding as a whole, this court finds that there was insufficient information before the Authority to adequately and properly *527 enable them to form a basis for the adoption of this regulation as required by statute.
The Authority's reliance upon the case of Garneau v. Eggers, supra, is misplaced. In that case, it was abundantly clear to Jersey City after its surveys and investigations that commercial traffic was the source of the difficulties it was experiencing. The municipality there had statistical evidence before it that 80% of the accidents on the Pulaski Skyway involved commercial vehicles, whereas only 11% to 17% of the traffic using that highway consisted of commercial traffic. Such evidence provided an extremely clear relationship between the ordinance banning commercial vehicles and the public safety.
In the instant case the Authority has failed to demonstrate anything in the way of establishing a relationship between the banning of motorcycles on the Expressway and the safety of persons and property on that roadway. In fact, the Authority admits that in the initial three-year period of Expressway operation, during which time motorcycles were permitted, no unusual occurrences involving motorcycles were experienced.
This court therefore finds that article 3.3(b) is arbitrary, capricious and unreasonable since there is no evidence which establishes a clear relationship between the regulation and the contribution, if any, which such regulation would make toward the efficient and safe handling of traffic on the Expressway and the public safety.
For the reasons expressed in Part IV of this opinion, this court finds the defendant not guilty of the offense with which he was charged.