James A. WHERRETT and James D. Turpen, Plaintiffs,

v.

Thomas D. DOYLE, Director, Nebraska Department of Roads, and Robert I. Bortle, Iowa District Engineer, and Mike Scheibeler, Commander, Post 3, Iowa State Patrol, Defendants.

Civ. No. 76-0-352.

United States District Court, D. Nebraska.

July 12, 1978.

Paul F. Hill, Omaha, Neb., for plaintiffs.

Gary R. Welch, Asst. Atty. Gen., Dept of Roads, Lincoln, Neb., John W. Baty, Asst. Atty. Gen., Dept. of Transp., Ames, Iowa, for defendants.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This case concerns the question of whether bicycle riders who are prohibited from traveling on the interstate bridges have been deprived of equal protection under the law and their right to travel freely in and among the states. The plaintiffs are bicycle drivers who claim to use bicycles for business and pleasure driving.[1] The defendant David O. Coolidge is a director of the Nebraska Department of Roads; the defendant Van Schneider is the Iowa District Engineer, and the defendant Mike Scheibeler is Commander, Post 3 of the Iowa State Patrol.[2]

The plaintiffs allege in their complaint that the defendants prohibit bicycle drivers from driving their bicycles on three interstate bridges between Council Bluffs, Iowa, and Omaha, Nebraska, specifically the I-680, I-480 and I-80 bridges, and have failed to provide alternative means for bicycle

---

1. Plaintiff James A. Wherrett did not appear at the trial of this case as a witness or otherwise.

2. The defendants Coolidge and Van Schneider were substituted for defendants Doyle and Bortle at the time of trial.

drivers to cross the Missouri River, thereby depriving the plaintiffs of their right to travel. The plaintiffs allege that through these restrictions, bicycle drivers have been deprived of equal protection as guaranteed by the Fourteenth Amendment since, essentially, a discriminatory classification based on wealth has been established: persons who can afford to operate automobiles are provided with avenues for travel and persons unable to afford automobiles but rely upon bicycles are deprived of such avenues. Finally, the plaintiffs allege that the exclusion of bicycle traffic is arbitrary and unreasonable. They assert that bicycle travel on the paved shoulders of the interstate highways is safer than bicycle travel on most non-interstate highways and streets where bicycle riders are permitted to travel, and consequently, the exclusion of bicycle riders from the interstate highways has no rational basis and does not serve a compelling state interest.

The plaintiffs pray that Neb.Rev.Stat. 39–633(4) (1974) be declared invalid in regard to bicycle traffic. That statute provides in pertinent part:

Use of a freeway and entry thereon by the following shall be prohibited at all times except by permit from the Department of Roads or from the local authority in the case of freeways not under the jurisdiction of the Department of Roads, and the Department of Roads or the appropriate local authority shall not issue such permit except in extreme emergency: . . . (4) bicycles . . . . .

The plaintiffs have also prayed that the state cease enforcement of the minimum speed laws in regard to bicycle traffic on the interstate bridges. Iowa Code Annotated, Section 321.285(8) (1975) provides in pertinent part:

Notwithstanding any other speed restrictions, the speed limit for all vehicular traffic . . . on fully controlled—access, divided, multi-lane highways . . shall be fifty-five miles per hour. . . It is further provided that a minimum speed of forty miles per hour, road conditions permitting, shall be established on

the highways referred to in this subsection.

It is further prohibited that any kind of vehicle, implement, or conveyance incapable of attaining and maintaining a speed of forty miles per hour should be prohibited from using the interstate system.

The defendants have argued, in response, that these restrictions are a proper exercise of the police power for the protection of the health, safety and welfare of the traveling public. In addition, the defendants argue that an alternative route for bicycle traffic does presently exist, namely, the Highway 275—92 bridge, known as the South Omaha bridge.

FACTS

The evidence presented at trial established that there are four different bridges crossing the Missouri River in the Omaha—Council Bluffs area: the I–80, I–680, I–480 and the Highway 275—92 bridges. The I–80 bridge has twin roadways, each thirty-eight feet in width consisting of twenty-four feet of traveling lanes with a four-foot inner shoulder and a ten-foot outer shoulder. The bridge is 2,468 feet long and has a concrete center barrier which is three feet, two inches high (commonly referred to as a Jersey barrier). The outer shoulder has twelve six-foot long drainage grates along its outer edge. The shoulder is used for emergency parking or emergency maneuvering. The speed limit on the bridge is fifty-five miles per hour with a forty-mile per hour minimum speed.

The I–480 bridge is two thousand five hundred thirty-eight (2,538) feet long, including the Douglas Street approaches on the Nebraska side of the bridge. It is a twin-structure bridge, each structure having a fifty-three foot roadway containing four twelve-foot wide traffic lanes, a two-and-a-half-foot wide outer shoulder and a three-foot wide inner shoulder adjacent to the center concrete barrier. On the Douglas Street approaches, which are the closest entry and exit ramps to the bridge on the Nebraska side, the shoulders are also three feet on each side of the traffic lane. There

are drainage grates on the outer two-and-a-half feet of the shoulders. The speed limit on the I–480 bridge is fifty miles per hour with a forty mile per hour minimum.

The west-bound portion of the I–680 bridge is an interstate highway system bridge. (The east-bound bridge is the Mormon toll bridge which is not under the control of Nebraska or Iowa.) The west-bound roadway, however, consists of two twelve-foot lanes with a ten-foot wide right shoulder and a six-foot wide left shoulder. There are no drainage grates but a "pipe scupper" at the edge. The speed limit on the I–680 bridge is fifty-five miles per hour with a forty mile per hour minimum.

The Highway 275—92 bridge is not part of the interstate system. This bridge is a two-lane bridge and has a thirty-five mile per hour speed limit with no minimum speed limit. There is a significantly lower traffic volume on this bridge. Adjacent to the roadway is a narrow walkway which is used as an escape area for pedestrians but would not be suitable for bicycle riders. There is no shoulder on this bridge.

The drainage grates along the shoulders of the interstate bridges pose a particular threat to bicycle riders. The bars of the grates run parallel to the direction a bicycle will travel, creating a serious danger for bicycle riders. However, that design for the drainage grates has maximum hydraulic efficiency.

## ISSUES

■ A threshold question is whether there exists a constitutional right to travel *by a particular means to travel.* There is no question that there is a constitutionally protected right to travel. As stated in *Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969):

> This Court long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.

However, it is a different matter entirely to say that traveling *by bicycle* is similarly protected. A three-judge district court in Massachusetts considered a similar question regarding the automatic suspension of a driver's license when a person failed to satisfy property judgments as a result of a car accident. The appellant argued that the operation of statute significantly impeded the right to travel and served to punish the exercise of that right. The court stated:

> Section 22A's sanction limits only one means of transportation—a car operated by a particular individual. The right to travel does not require the state to avoid any regulation of methods of transportation if it would have some minimal effect on interstate travel. We, therefore, conclude that the statute does not violate the right to travel itself and does not affect the fundamental interest requiring close judicial scrutiny.

■ Assuming arguendo that the fundamental right to travel encompasses the right to travel by a particular means, "any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest is unconstitutional." *Shapiro, supra*, at 634, 89 S.Ct. at 1331. *See also Dunn v. Blumstein*, 405 U.S. 330, 339, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). In light of these premises, this court must consider whether the restrictions for use of the bridge are legitimately defensible in that they further a compelling state interest and do not unnecessarily impinge on constitutionally protected interests. *See Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).

To meet the burden of the compelling state interest test, the defendants must first establish what interest they seek to promote and secondly, that the regulations serve that interest without being arbitrary and capricious. The states are seeking to protect the health, safety and welfare of their citizens by regulating the use of the highways.

The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. . . . In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles,— those moving in interstate commerce as well as others. . . . This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety and comfort of their citizens . . . .

*Hendrick v. Maryland*, 235 U.S. 610, 622, 35 S.Ct. 140, 142, 59 L.Ed. 385 (1915). *See Raymond Motor Transportation, Inc. v. Rice*, 417 F.Supp. 1352 (W.D.Wis.1976) (restrictions on size of trucks traveling within the state); *Garneau v. Eggers*, 113 N.J.L. 245, 174 A. 250 (1934) (exclusion of commercial vehicles from Holland Tunnel); *Chicago Motor Coach Co. v. City of Chicago*, 337 Ill. 200, 169 N.E. 22 (1929) (speed regulations as a valid exercise of police power); *Slegers-Forbes, Inc. v. New Jersey Highway Authority*, 123 N.J.Super. 291, 302 A.2d 545 (1973) (exclusion of motorcycles from Garden State Parkway); *State v. Bennor*, 6 N.C.App. 188, 169 S.E.2d 393 (1969) (speed restriction in relation to size and weight of vehicles).

The regulations in question here which exclude bicycles from the interstate bridges and which establish minimum speeds for vehicles on those bridges are designed to move traffic across the interstate bridges in as uniform and safe a manner as possible. The evidence established that introduction of slow moving vehicles into a traffic pattern of fast moving vehicles is a significant safety hazard. Drivers of the faster moving vehicles must stop, slow down suddenly or swerve in order to avoid causing accidents. The evidence also establishes that the present fifty-five mile per hour maximum and forty mile per hour minimum speed limitations on the interstate bridges cannot be lowered significantly without creating major traffic problems in the two cities, particularly during rush hours. Bicycle riding on the interstate bridges can only be safe for all concerned if a separate structure for bicycles were built or Jersey barriers were added to separate the bicycle lane from the automobile lanes. The plaintiffs have specifically not asked that protected bicycle lanes be constructed across the bridges. They argue only that bicycle riders should be allowed to drive on the bridges as they presently exist, using existing shoulders as their bicycle lane with one exception: the width of the shoulder lanes on the I–480 bridge should be increased by several feet by decreasing the width of each automobile lane by one foot. However, this court finds that bicycle riders on the interstate bridges, whether in the actual traffic lanes or on the shoulder lane, promote a dangerous and unsafe condition.

It is the conclusion of this court that the regulation of traffic on the interstate bridges to the exclusion of bicycles is a proper exercise of the police power and is not arbitrary and capricious. *See Garneau v. Eggers, supra; Slegers-Forbes, Inc. v. New Jersey Highway Authority, supra.*[3]

This court finds that the defendants have met their burden of establishing that the regulations in question are a reasonable exercise of the police power for the protection of the health, safety and welfare of the public. Accordingly, the plaintiffs' claim for relief must be denied. A separate order will be entered this day in accordance with this memorandum opinion.

---

**3.** In addition, an alternative route exists for bicycle traffic between the two cities. Bicycles are not prohibited from the Highway 275—92 bridge. Although the narrow width of that bridge requires that a bicycle be ridden in the traffic lane, the lower speed limit and the lower traffic volume on that bridge make it more suitable for bicycle traffic.