OPINION OF THE COURT
Edward H. Lehner, J.
The motions for preliminary injunctions in the two above-entitled actions are consolidated herewith for disposition. The principal issue raised on the applications is whether the order of the Commissioner of the New York City Department of Transportation (the Commissioner) barring bicycles from des *870 ignated midtown Manhattan streets during certain hours is valid. The court concludes that because it was not enacted in the form of a regulation, with publication and notice as mandated by the New York City Charter, it is invalid. Consequently, enforcement is enjoined.
FACTS
On July 22, 1987 defendants issued a joint press release announcing that, in an effort to improve traffic safety, beginning August 31, 1987 "bicycles will be banned for 90 days from Park, Madison and Fifth Avenues between 31st and 59th Streets from 10 a.m. to 4 p.m. on weekdays”. On August 14, 1987, this decision was formally promulgated as an order of the Commissioner (the Order), with the commencement date fixed therein as August 24.
PERTINENT STATUTES
Paragraph (a) of section 1642 of the Vehicle and Traffic Law grants to the city the right to regulate traffic in certain respects, and reads, in pertinent part, as follows:
"In addition to the other powers granted by this article, the legislative body of any city having a population in excess of one million, may by local law, ordinance, order, rule, regulation or health code provision prohibit, restrict or regulate traffic on or pedestrian use of any highway * * * in such city * * * provided, however, that such local laws, ordinances, orders, rules, regulations and health code provisions shall supersede the provisions of this chapter where inconsistent or in conflict with respect to the following enumerated subjects * * *
"3. The prohibition or regulation of the use of any highway by particular vehicles or classes or types thereof or devices moved by human power.”
Vehicle and Traffic Law § 1603 (b) provides, in effect, that the power granted to "the legislative body” in the above-quoted section may be exercised in the City of New York by the Commissioner.
Section 1105 of the New York City Charter provides as follows with respect to the means by which regulations are to be adopted:
"§ 1105. Rules and regulations; adoption; publication; effective date. a. Each head of an agency may, except as otherwise *871 provided by law, make rules and regulations for the conduct of his office or agency and to carry out its powers and duties.
"b. No rule or regulation of an officer of the city or of a city agency, included but not limited to those with respect to the fixing of charges or penalties, nor an amendment or addition thereto, shall be adopted or repealed pursuant to any provision of this charter, unless, prior thereto, there shall be afforded by such officer or agency an opportunity for interested persons to comment in writing thereon by a date certain to be specified in a notice published at least twice in the City Record, the first publication being not less than twenty days and the second publication being not more than ten nor less than five days preceding the date so specified. The notice shall set forth the text and an explanation of the rule, regulation, amendment or addition and the authority pursuant to which it is proposed to be adopted or repealed. Such publication in the City Record shall constitute complete legal notice.
"c. In addition thereto, and on the occasion of the first publication in the City Record, for the purpose of broadly disseminating such information, a separate copy of such notice shall be transmitted to the council and mailed to each council member, to the chairpersons of all community boards and to civic organizations and the news media * * *
"f. No rule or regulation made by any officer of the city or by an agency nor any amendment, addition, or repeal of it shall be effective until (1) it is filed in the office of the city clerk, (2) a copy is transmitted to the council for its review, and (3) after such filing and transmittal, it is published in the City Record and thirty days have elapsed after such publication.”
Section 2903 (b) of the New York City Charter provides the following with respect to the powers of the Commissioner: "Parking and traffic operations. The commissioner shall:
"(1) make such rules and regulations for the conduct of vehicular and pedestrian traffic in the streets, squares, avenues, highways and parkways of the city as may be necessary. The violation of such rules and regulations shall be a traffic infraction * * *
"(2) establish, determine, control, install and maintain, without the necessity of filing and publication, the design, type, size and location of any and all signs, signals, marking, and similar devices indicating the names of the streets and other public places and for guiding, directing or otherwise regulat *872 ing and controlling vehicular and pedestrian traffic in the streets, squares, parks, parkways, highways, roads, alleys, marginal streets, bridges and other public ways of the city.”
THE CONTENTIONS OF THE PARTIES
In both actions plaintiffs seek a judgment declaring the Order invalid and unenforceable. Among the arguments raised as grounds to obtain such relief are that: i) the Order is unconstitutional because it denies equal protection and was adopted without due process; ii) adoption of the Order was an arbitrary and capricious act as, rather than providing greater safety, it increases hazards by requiring cyclists to use the more commercially traveled streets such as Third and Sixth Avenues and Broadway; iii) the city failed to comply with the State Environmental Quality Review Act; and iv) the regulation of bicycles by defendants is prohibited by section 316 of the Highway Law.
However, the major contention asserted is that the Order was. not promulgated in the manner prescribed by the New York City Charter. Plaintiffs assert that the Commissioner lacked authority to enact the ban without adopting it as a regulation and complying with the publication and notice requirements of section 1105. Plaintiffs point to various sections of the traffic regulations containing local prohibitions which were adopted through the enactment of formal regulations (e.g., §§ 159A, 160, 170, 171, 172, 211) to demonstrate that in the past the Commissioner recognized the need to adopt prohibitions through the enactment of regulations.
Defendants, on the other hand, assert that under section 2903 (b) (2) of the New York City Charter the Commissioner had the authority to enact the ban by merely ordering that signs be affixed in the affected streets specifying the prohibition. They argue that merely because in a few instances the Commissioner chose to enact a prohibition through adoption of a regulation does not mean that the power does not exist to enact bans through the posting of signs without filing or publication. They maintain that "where the Department has acted by regulation, it did not do so because it felt it was compelled to do so by § 1105, but because of practical and policy considerations involved in regulating various types of traffic in various ways”. The essence of defendants’ position, as refined at oral argument, is that the Commissioner need not enact any regulations and may regulate traffic and park *873 ing in the city merely by erecting signs, without any notice or publication. In support of this position defendants point to section 1642 of the Vehicle and Traffic Law which they assert permits the Commissioner to act by "order”.
DISCUSSION
That Vehicle and Traffic Law § 1642 provides that one of the means by which the city may regulate traffic is by "order” does not mean that the Commissioner need not comply with the New York City Charter § 1105 requirement for publication and notice when other New York City Charter provisions require that a prohibition be adopted by means of the promulgation of a regulation. In other words, although State law may permit a city official to proceed in a specified manner, if the city, through its legislative body, requires that the official act only after giving certain notices, the city’s limitation governs and restricts the manner in which the official may proceed.
The issue thus presented is whether section 2903 (b) permits the bicycle prohibition to become effective under the authority of paragraph (2) thereof authorizing the posting of signs.
An accepted legal principle is that an interpretation of a statute by the agency administering it is entitled to great weight. However, here the agency has not acted consistently in determining when a regulation is necessary. As indicated above, the Commissioner has enacted several regulations that are purely local in nature and could seemingly be handled merely by the posting of signs. However, it is obvious that most local prohibitions have been invoked without adoption of a regulation. Consequently, the prior actions of this agency do not provide any useful guide in interpreting section 2903.
In Edenwald Contr. Co. v City of New York (86 Misc 2d 711, 721 [Sup Ct, NY County 1974], affd on opn below 47 AD2d 610 [1st Dept 1975]), the Commissioner of Highways issued a directive that limited the hours during which an asphalt plant could operate in certain zoning areas. The court held that such limitation was beyond his powers, and stated that to argue that a " 'directive’ ” was not a " 'rule or regulation’ ” requiring compliance with section 1105 would be "semantic sophistry”, and that a court should look to the "substantive effect” of the directive to determine whether compliance with the publication and notice requirements was mandated.
In People v Cull (10 NY2d 123, 126 [1961]), an administrative agency issued an order limiting speed on a State highway *874 to 35 miles per hour without complying with the State constitutional requirement that all "rules and regulations” be filed with the Department of State. The court noted that such term had not "been the subject of precise definition”, but that as used in the Constitution it means a "norm or prescription which establishes a pattern or course of conduct for the future” (supra, at 126), and that although a conviction for speeding could not be sustained without proof of the posting of the limitation, a filing was also necessary to establish its legality. The court, in holding the order invalid, concluded as follows with respect to the filing requirement: "We know that underlying the provision was the desire to have all rules and regulations affecting the public filed in one, easily available, central place. We should not strive to read exceptions into the section or construe it so as to permit the official in charge of the bureau, commission or authority to avoid the necessity of filing by attaching the label 'order’ or 'statement of policy’ or some other term to what is essentially a rule or regulation. The spirit and design of the constitutional provision are best effectuated by requiring the administrator, if he wishes the rules and regulations of his agency or department to be effective, to file them no matter what label is assigned to them.” (Supra, at 129; see also, Matter of Jones v Smith, 64 NY2d 1003 [1985]; Matter of Callanan Indus. v White, 118 AD2d 167 [3d Dept 1986].)
Coming to the case at bar, it is evident that paragraph (1) of section 2903 (b) is the authority for the adoption of policies and rules of conduct regulating traffic. In contrast, paragraph (2) (authorizing certain acts of the Commissioner "without the necessity of filing and publication”) deals with the "design, type, size and location” of signs, and grants the Commissioner discretion as to where, how, and in what manner the necessary notices are to be posted to inform the public of prohibited conduct and other restrictions promulgated pursuant to paragraph (1). It does not authorize the Commissioner to establish rules of conduct (here banning cyclists from a significant portion of midtown streets) merely by putting up signs to that effect. It is noted that it is the violation of the rules and regulations (not of the notices on the signs) that is stated to be a "traffic violation”.
By granting the public (through publication and notices to the members of the City Council, the chairpersons of affected community boards, and the media) an opportunity to comment *875 on a proposal before it becomes effective, the New York City Charter provision is an example of a legislative desire to give the citizenry a voice in the operation of government. Although no public hearing is mandated before a regulation becomes effective, the right to communicate views to the decision-maker before the decision is made is certainly more in harmony with the democratic process than to permit a Commissioner to change governing rules overnight without notice to the community or segment of the population affected.
Here a decision was made to regulate conduct affecting a significant segment of the population. Although the public was informally notified of the ban approximately a month before the effective date of the Order, legal enactment thereof required its formal adoption as a regulation. The formalities for such adoption not having been complied with, the ban is unenforceable.
In light of this determination, the court has not ruled on the other arguments presented by plaintiffs.
The motions in these two actions are for preliminary injunctions. Ordinarily, since defendants have not formally answered the complaint, consideration of the grant of summary judgment would be inappropriate (CPLR 3212 [a]). In fact, here summary relief has not even been requested. However, the only factual finding necessary for plaintiffs to establish the invalidity of the Order is that defendants failed to comply with the publication and notice requirements of section 1105. Since this is acknowledged, and the parties have fully briefed the issue as to whether compliance was necessary, there is no practical reason to delay the grant of summary judgment. (For similar procedural treatment, see, Conrad v Third Sutton Realty Co., 81 AD2d 50 [1st Dept 1981], lv denied 55 NY2d 601; Bragar v Berkeley Assocs. Co., 111 Misc 2d 333 [Sup Ct, NY County 1981].)
CONCLUSION
Since the court finds, as a matter of law, that the Order was improperly promulgated, plaintiffs are granted summary judgment declaring the Order to be invalid, and a permanent injunction barring enforcement. The defendants’ cross motions to dismiss are denied.