OPINION OF THE COURT
Beatrice Shainswit, J.
*296 Petitioners bring this CPLR article 78 proceeding to annul actions taken by respondents, who have closed the South Outer Roadway on the lower level of the Queensboro Bridge to bicycle and pedestrian traffic on weekdays between the hours of 3:30 p.m. and 8:00 p.m. Specifically, petitioners seek: (1) a declaration that respondents are in violation of the City Administrative Procedure Act (APA) (NY City Charter § 1041 et seq.)\ (2) a declaration that respondents are in violation of the Constitution of the United States and the Constitution of the State of New York; (3) an injunction preventing respondents from closing the lane to bicycle and pedestrian traffic; and (4) an order of mandamus compelling respondent New York City Department of Transportation (DOT) to follow proper rule-making procedures before closing the lane to nonmotorized traffic in the future.
The relevant facts are not in dispute. The South Outer Roadway was first officially designated as a pedestrian and bicycle lane on June 3, 1979. During the ensuing years, this exclusive use has been restricted at various times due to construction occurring on other parts of the bridge.
On September 6,1996, the North Outer Roadway of the lower level was closed for repairs. Respondent DOT then implemented several different traffic patterns on the bridge’s remaining nine lanes, in order to minimize traffic problems caused by the lane closure. Finally, effective November 11, 1996, the DOT designated the South Outer Roadway exclusively for Queens-bound motor traffic on weekdays between the hours of 3:30 p.m. and 8:00 p.m. This restriction on the use of the lane by pedestrians and cyclists was accomplished by the posting of signs, a press release on October 30, and dissemination of 20,000 leaflets and other press advisories after November 4.
The Alleged Rule-Making Violation
Petitioners cite the City Administrative Procedure Act which sets forth specific procedures that must be followed whenever an agency, such as the DOT, adopts a rule. The lane restriction, petitioners contend, constitutes a "rule” within the meaning of the APA because it involves "substantial policy considerations” (NY City Charter § 1041 [5] [b] [iv]). They argue that regulating the conduct of over 500 cyclists and pedestrians involved substantial policy considerations. Therefore, petitioners say, under the City APA, respondents were required to publish a written draft of the proposed rule, set a date for a public hearing, publish a draft statement of the basis and *297 purpose of the proposed rule, and invite written comments; no final rule may be adopted until "[a]fter consideration of the relevant comments presented” (NY City Charter § 1043 [d]).
Petitioners draw an analogy between the restrictions at issue here and a 90-day ban imposed on cyclists in 1987. That ban, which affected Park, Madison, and Fifth Avenues between 31st and 59th Streets, was also accomplished by posting signs, and was enjoined by the court, which found adoption of the ban as a regulation was required (Association of Messenger Servs. v City of New York, 136 Misc 2d 869 [Sup Ct, NY County 1987]).
That analogy, and the other authority cited by petitioners, are inapplicable. An existing Rule of the City of New York — 11 RCNY 4-12 (o) (1) — prohibits bicyclists and pedestrians from using certain bridges within the City of New York "unless signs permit such use.” The Queensboro Bridge is one of the bridges enumerated in the Rules (11 RCNY 4-07). The City Charter gives the DOT the authority to post traffic signs regulating pedestrian and vehicle traffic on City bridges (NY City Charter § 2903 [a]). Based on these existing rules — which were inapplicable to the situation presented in Messenger Servs. (supra) — the DOT has the authority to regulate pedestrian and cyclist access to City bridges by the posting of signs. The rule-making process urged by petitioners, therefore, is irrelevant.
The Alleged Violation of the Constitutional Right to Travel
Petitioners contend that the daily restriction imposed by respondents violates their constitutional right to travel. They concede the United States Supreme Court has not specifically addressed an intrastate right to travel, but they argue that such an intrastate right can be inferred from decisions issued by the Second and Third Circuits.
This attempt to couch the DOT’s actions in terms of a constitutional right cannot save petitioners’ application. Even if the court were to presume the existence of a constitutional right of intrastate travel, that right would not extend to a particular mode of travel (Wherrett v Doyle, 456 F Supp 203 [D Neb 1978]). Highway safety regulations, such as the restriction at issue here, enjoy a strong presumption of validity (Ruiz v Commissioner of Dept. of Transp. of City of N. Y., 679 F Supp 341 [SD NY 1988]).
Mandamus
Mandamus is a remedy used to compel an agency to perform a duty required by law (Matter of Hamptons Hosp. & Med. Ctr. *298 v Moore, 52 NY2d 88). It is available where there is a clear right to the relief sought against the agency, and the agency has refused to perform its duty (Matter of Brusco v Braun, 84 NY2d 674 [1994]).
Mandamus, however, is not available here. Petitioners have not established a clear right to the relief they seek. Furthermore, the lane restriction imposed by respondents involves " 'questions of judgment, discretion, [and the] allocation of resources and priorities [which are] inappropriate for resolution in the judicial arena’ ” (Jones v Beame, 45 NY2d 402, 407 [1978]).
On this record, the application is denied in its entirety, and the petition is dismissed.