297 A.2d 649.

NORMAN E. TRICE *et al. vs.* CITY OF CRANSTON *et al.*

DECEMBER 5, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a plaintiffs' appeal. There are four plaintiffs. Each of them has been a member of the Cranston Fire Department for more than 20 but less than 25 years. They find themselves in a dilemma because of a difference of opinion which exists between the legislative and executive branches of the municipality. In June, 1969, the city council, in overriding the mayor's veto, enacted an ordinance which reduced the eligibility time required for a

firefighter's longevity pension from 25 to 20 years. After the plaintiffs sought to take advantage of the liberalized pension system, the mayor informed them of his belief that the new ordinance was invalid, and, if they persisted in their efforts toward retirement, their applications would be considered as a simple and unqualified resignation from the department. Although the council has approved their retirement applications, the plaintiffs have stayed on the job. To resolve their dilemma, the plaintiffs instituted this civil action which seeks a declaratory judgment as to their rights.

The case was submitted to a justice of the Superior Court sitting without a jury. The record presented to him included an agreed statement of facts, a compilation of the various pension ordinances enacted pursuant to an enabling act and some testimony. The trial justice filed a written decision sustaining the position taken by the mayor and judgment was entered invalidating the ordinance and the council's placement of plaintiffs on the pension list.

The enabling act is P. L. 1944, ch. 1414. It authorized the establishment of the "Firemen's pension fund of the city of Cranston." The General Assembly declared that the fund could be made up of salary deductions, miscellaneous donations and such funds as the council, in its effort to carry out the purpose of the act, might from time to time appropriate. The portion of the act on which the trial justice relied is its very first sentence. It reads as follows:

"Section 1. The mayor, with the advice and consent of the city council of the city of Cranston, is hereby authorized and empowered to create and establish a firemen's pension list."

The trial justice also faulted the council because he felt the 1969 ordinance was at odds with certain provisions of the Cranston charter. His decision concluded with the observation that the council's modification of the former 25-year requirement made a "farce" of the collective bar-

gaining negotiations that had been conducted between the union representing all Cranston firefighters and certain municipal officials including the mayor and the city solicitor. We believe the trial justice erred.

First, it is necessary to review briefly the history of the firefighters' pensions in Cranston. Prior to 1944, there was no pension plan. Although P. L. 1944, ch. 1414 became effective on March 9, 1944, apparently over two years elapsed before the municipality began to implement its provisions. On April 23, 1946, the city council enacted Ordinance No. 27. This ordinance contains a proviso that "* * * this city council hereby creates a pension list and a pension fund for the members of the city's permanent fire department." It empowered the city treasurer to deduct five per cent from each individual's weekly salary and deposit it in the pension fund.

The ordinance provided for two types of pensions—one based on disability and one based solely on years of service. Those who might not be able to perform active duty by "reason of age, physical infirmity, or other causes" could be pensioned upon the written recommendation of the mayor and an affirmative majority vote of the council. Any firefighter who had attained the age of 55 and who had served 25 years could be retired simply by applying to the council who would then place the applicant on the pension list. During the ensuing years, the enabling act and the ordinance have been amended several times. In 1951, a system of death benefits was made available to the firefighter's widow and children. Again, in 1953, the five per cent employee's contribution was reduced to one per cent. A provision calling for mandatory retirement at 55 years of age with an opportunity to have one's service extended on a year-to-year basis up to the age of 62 became effective in 1964. Throughout all the years that the Firemen's Pension Fund of the city of Cranston has been

operative, a firefighter who has rendered long and faithful service could be placed on the pension list merely by filing his application with the council. Those who sought retirement on disability grounds have been required to submit their applications to the twin scrutiny of both the mayor and the council.

At this juncture, we should add one more historical note. These plaintiffs are all members of Local 1363, International Association of Fire Fighters, AFL-CIO, the duly certified bargaining agent for the members of the Cranston Fire Department. There is no question that the union was the motivating force behind the introduction of the 1969 ordinance. It is also obvious that the mayor did not sponsor the introduction of the ordinance.

The trial justice, in voiding the May, 1969, 20-year ordinance, stressed the first sentence of the 1944 enabling act which empowers the mayor with the council's advice and consent to create and establish a "firemen's pension list." It was this language which caused the trial justice to rule that any ordinance which sought to modify the pension plan had to be initiated by the mayor. The council, so said the Superior Court, could only act in an advisory capacity. We think otherwise.

As noted earlier, prior to 1944 there were no pension benefits available to the Cranston firefighters. The enabling act's reference to the establishment by the mayor of a pension list authorized the individual who was mayor at the time the pension fund was created to perform one simple ministerial act: set up a list or register, or roster in which, or on which, could be found the names of those who were entitled to receive a pension. Once the list had been set up, the succeeding chief executives could not rely on the first sentence of the enabling act as any authority to trespass upon functions that were properly in the legislative domain. The municipal legislators were not re-

quired to abdicate their right to introduce an ordinance which might initiate changes in the firefighters' pension plan. The enabling act imposed no obligation upon the council to abstain in this area of governmental concern and defer to the wishes of the city's chief executive.

The city officials, in seeking to assert mayorality supremacy in matters concerning firefighters' pensions, also point to the second sentence of the enabling statute which reads:

> "Upon confirmation by said city council, the mayor may place upon said pension list officers and members of the regular paid fire department of the said city who, by reason of age, physical infirmity, or other causes, may be unfit to perform active duty."

Chapter 1414 cannot be considered as a model of legislative preciseness and clarity. If read literally, all that the General Assembly authorized for the Cranston firefighter was the grant of a disability pension. The statute speaks specifically only of firefighters who "may be unfit to perform active duty" because of "age, physical infirmity, or other causes." Other municipalities have received the Legislature's express permission to award a disability pension and, for want of a better term, a "longevity" pension. Section 6 of P. L. 1935, ch. 2246 not only authorizes the city of Woonsocket to pension officers and men of its police department who were unable to perform their duties because of "age, physical infirmity, or other causes" but it also allows a pension to "any officer who has completed twenty-five years of active service in the department." The city of Providence Retirement Act, which covers all municipal employees including firefighters, was enacted in 1923. There, the General Assembly authorized payment for a "service retirement allowance" and a "disability retirement allowance." Public Laws 1923, ch. 489, sec. 9. The city of Newport has received specific permission to offer its police two types of pensions. Public Laws 1947, ch. 1896.

. The record shows that for over two-score years the members of the Cranston Fire Department have had a portion of their salaries withheld and transferred to the pension fund. Most, if not all of those now receiving a longevity pension, have never been required to seek the mayor's approval for their retirement. In our opinion, the mayor's imprimatur is required only in those instances where a disability pension is being sought.

Long acquiescence in a continued practice, we have said, is entitled to great weight in determining legislative intent. *Chernov Enterprises, Inc.* v. *Scuncio,* 107 R. I. 439, 268 A.2d 424 (1970); *Stidhams* v. *McPherson,* 106 R. I. 295, 259 A.2d 114 (1969). Further, it is a well-recognized principle that a longstanding, practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the Legislature should be accepted as evidence that such a construction conforms to the legislative intent. *Council 81, AFL-CIO* v. *State of Delaware,* Del., 293 A.2d 567 (1972); *State* v. *Hubschman,* 81 N. J. Super. 452, 195 A.2d 913 (1963); *see also,* 2 Sutherland, *Statutory Construction* (3d ed. 1943) §5107. Thus in the light of what has transpired over the years in the city hall in Cranston and the state house in Providence, we uphold the action of the council in originating pension legislation which permits a firefighter to retire for no other reason than a grateful community wishes to assist in assuring its veteran firefighters a somewhat financially stable respite from such things as the fire's roar and the siren's shriek and there is no necessity that such retirees obtain prior approval from the mayor. The enabling act, therefore, gives no justification for voiding the 1969 ordinance.

The Cranston city charter stipulates that there can be no appropriation for an item not contained in the annual appropriation ordinance unless the legislation calling for

such an appropriation is accompanied by a certificate by the director of finance stating there is available unencumbered funds sufficient to meet the appropriation.[1] The 1969 ordinance was passed without benefit of a certificate. The certification requirement which was relied on by the trial justice affords no basis for nullifying the five-year reduction in the longevity pension requirement. In *Marro v. General Treasurer*, 108 R. I. 192, 273 A.2d 660 (1971),[2] we emphasized that the General Assembly's power to provide for and regulate the payment of pensions to policemen overrides any municipal charter provisions which purport to do the same. What was said about pensions due the Cranston police applies equally to that municipality's firefighters. Chapter 1414 authorizes the council to appropriate such funds as may be necessary to carry out the purposes of the pension legislation. While the council has not yet appropriated funds that will provide the extra benefits, it may proceed to do so without regard to the charter provision relating to the treasurer's certificate.

Finally, we cannot fault the 1969 ordinance on the constitutional or legal ground that it is an impermissible impairment of the contractual obligations created by various collective bargaining agreements entered into by the firefighters' union and the city.

---

[1] The relevant portions of the chapter are secs. 6.17 and 6.18. The finance director estimated that the city's share of a three-year cost of the new pension plan would be approximately $250,000. He also stated that no one had asked him if there was any unencumbered balance available. The director also observed that if any appropriation was made to implement the 1969 ordinance for just one year, successive payments would have to be provided in all future annual appropriation ordinances.

[2] The 1944 enabling act is almost a carbon copy of P. L. 1937, ch. 2549, which established the Cranston Policemen's Pension Fund. The one difference is a requirement that all witness fees and compensation for extra details due the policemen be paid into the pension fund.

In May, 1968 the council approved a contract which set the wage pattern for the fiscal year beginning July 1, 1968 and ending June 30, 1969. This agreement called for the creation of a joint committee made up of firefighters and city officials to study several matters including a 20-year pension plan. The deadline for the committee's report and recommendations was November 1, 1968. The committee met once in September but nothing of substance was accomplished. On October 28, 1968, the council authorized the mayor and the director of finance to enter into three agreements with the union concerning the wages, hours and working conditions for the fiscal years 1969-70, 1970-71 and 1971-72. The 1969-70 agreement continued the life of the committee and the parties acknowledged the problems posed by the adoption of a new pension plan and they agreed to explore the problems. The committee's recommendations and reports were to be rendered "as soon as practicable."

There was a municipal election in November, 1968 and a new council took over in Cranston on the first Monday of January, 1969. The ordinance calling for a 20-year longevity pension became the law six months later. There is no evidence that prior to this time any deliberative efforts have been expended by the joint committee. Discussions were conducted in October, 1968 but only on a most informal basis between the mayor, the city solicitor and the union president. The joint committee has never met except for a single occasion in September, 1968.

If we take the agreements one by one, we note a hiatus. According to the agreement for the fiscal year 1968-69, the committee report was due on November 1, 1968. The 1969-70 agreement which purports to extend the committee's life did not become effective until July 1, 1969. There appears to be a period of seven months where the committee seems to be in a state of suspension. Neither agree-

ment states that the firefighters are to be bound by the committee's findings—whenever they might be made. We can see nothing in any of the agreements whereby the union membership agreed that the sole and exclusive avenue for any modification of the pension plan would be by way of the bargaining table rather than by going to the legislative chambers and exercising their civic right to seek the assistance of the members of the new council.

While there are those who, because they are versed in all the delicate nuances attendant to true collective bargaining, may grimace at the council's bypassing the executive arm of Cranston's government, there was no bar to the 1969 council exercising its legislative prerogative.[3]

The plaintiffs' appeal is sustained, the judgment appealed from is vacated and the case is remanded to the Superior Court for the entry of a judgment which is in accord with this opinion.

*Hogan & Hogan, Thomas S. Hogan,* for plaintiffs.

*Peter Palombo, Jr., City Solicitor,* for defendants.

---

[3]Since the time the contracts involved in this case were signed. the General Assembly, in apparent recognition of the diffused sources of power within the corporate structure of a municipality, has amended G. L. 1956 (1968 Reenactment) §28-9.1-5 of the Fire Fighters' Arbitration Act. This section now permits a city or town to designate a duly authorized person (or persons) who can negotiate with the union and enter into a binding collective bargaining agreement. P. L. 1970, ch. 75. In 1968. even though the negotiations were carried on by officials in the executive branch of government, the contracts embodying their efforts were signed only after the city council authorized their execution.

The execution of the three one-year contracts was required by §28-9.1-6 which limited the life of a collective bargaining agreement to one year. The Legislature, at its January, 1970 session, also amended this section by providing that such an agreement could cover a longer time interval but in no event could it exceed the term of three years. P. L. 1970, ch. 67.