340 A.2d 143.

SPORTFISHERMAN CHARTER, INC. *vs.*
JOHN H. NORBERG, *Tax Administrator*.

JUNE 27, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. The State Tax Administrator filed this petition for certiorari under G. L. 1956 (1969 Reenactment) §42-35-16, as amended by P. L. 1972, ch. 169, §30, seeking review of a judgment entered by a Superior Court justice reversing a decision of the tax administrator assessing a tax under the Sales and Use Tax Act against Sportfisherman Charter, Inc., a Rhode Island taxpayer. We granted the writ, and pursuant thereto, the pertinent records have been certified to this court.

. .The record discloses that Sportfisherman Charter, Inc., hereinafter referred to as the taxpayer, is a Rhode Island corporation engaged in the business of chartering boats for sportfishing. In September 1970, the taxpayer purchased a boat, the subject of the present litigation, from its principal officer and in January 1971 documented the boat with the United States Coast Guard. On February 9, 1971, the taxpayer obtained a sales tax permit from the State of Rhode Island. On March 9, 1971, the tax administrator issued a "Notice of Deficiency Determination Under Sales and Use Tax Law" in the amount of $2,002.50, which amount consisted of tax due of $1,780 based on a valuation of the boat estimated at $1,000 a foot, interest of $44.50, and a penalty of $178.

Pursuant to G. L. 1956 (1970 Reenactment) §44-19-17, the taxpayer requested a hearing to contest the deficiency determination. After a hearing, the administrator issued a final determination setting the taxpayer's use tax liability at $4,845.43, of which amount $3,907.60 was the tax due based on a valuation of the boat obtained from corporation tax return filed by the taxpayer after the original use tax determination had been made, $547.07 was interest on the tax due, and $390.76 was a penalty. The taxpayer, acting under the provisions of §42-35-15, thereupon petitioned the Superior Court for review of the contested assessment. The Superior Court justice ruled that

the administrator erred in assessing a use tax based on the purchase price of the taxpayer's boat and to that extent reversed the determination of the administrator.

The administrator takes the position that the taxpayer had the option under §44-18-27[1] to pay a sales tax on the rental income generated by the boat, but that by failing to elect this option within a reasonable time after purchase, he became liable for a use tax based on the entire sales price of the boat. We believe this position misconstrues the intent of §44-18-27. As we indicated in *Capitol Bldg. Co.* v. *Langton,* 101 R. I. 131, 135, 221 A.2d 99, 102 (1966), the sales and use taxes are intended to be complementary methods of assuring that sales of goods at retail are subjected to a 5 percent impost based on the price received by the seller. A retailer, who purchases goods from a manufacturer and holds them for resale, will incur no sales or use tax liability.[2] If, however, a retailer makes any use of the property other than holding it for resale, §44-18-26 subjects him to tax liability. In order to allow a retailer to make the most efficient use of his sales stock, however, the Legislature has carved out an

---

[1]General Laws 1956 (1970 Reenactment) §44-18-27 reads as follows:

"Tax on rental income to retailer.—If the sole use of the property, other than retention, demonstration, or display in the regular course of business, is the rental of the property while holding it for sale, the purchaser may elect to pay the tax as measured by the amount of the rental charged rather than as measured by the cost of the property to him. Upon a subsequent sale of such property, however, the person making the sale shall include the full amount of the selling price in his gross receipts and shall pay the tax thereon."

[2]General Laws 1956 (1970 Reenactment) §44-18-18 imposes a sales tax on sales at retail, defined in §44-18-8 as sales for any purpose, other than resale, in the regular course of business. Thus, a sale from manufacturer to retailer is exempt. Section 44-18-20 imposes an equivalent use tax on the storage (defined by §44-18-9 to exclude holding for sale in the regular course of business), use or other consumption in this state of tangible personal property purchased from a retailer. There is, therefore, no taxable event until the retailer sells the property to one who will not hold it for resale in the regular course of business.

exception to the operation of §44-18-26. Section 44-18-27 allows a retailer, who incidentally rents out property *while holding it for sale,* to elect to pay a sales tax measured by the amount of rental charged.[3] In the instant situation, the taxpayer is not holding his boat for sale in the regular course of business and only incidentally renting it. Charter, not sales, is the expressed purpose of the taxpayer, and thus he does not come within the exception marked out by §44-18-27.

As §44-18-27 applies only to property which one intends to sell and is only incidentally renting until a buyer can be found, the taxpayer argues that he is not subject to an election requirement, and that his situation should be governed by the exemption set out in §44-18-34. That section reads as follows:

> "Exemption from use tax of property subject to sales tax.—The storage, use, or other consumption in this state of property, the gross receipts from the sale of which are required to be included in the measure of the sales tax, shall be exempted from the use tax."

In *Capitol Bldg. Co.* v. *Langton, supra* at 137, 221 A.2d at 103, we concluded that §44-18-34 was prospective in thrust and was designed to avoid the imposition of double tax liability on any one consumer of property.[4] We also

---

[3]Implicit in G. L. 1956 (1970 Reenactment) §44-18-27 is the assumption that the revenue derived from a sales tax on the rental of property presently held for sale, plus a sales tax on the gross receipts from the property's ultimate sale, will be no less than would have been received if the property had been simply held and later sold.

[4]It may be noted that G. L. 1956 (1970 Reenactment) §44-18-34 is not as widely applicable as might be thought on an initial reading. Section 44-18-18 imposes a sales tax only on sales at retail by a retailer, who §44-18-15 defines as one engaged in the business of making sales at retail (defined in §44-18-8 as a sale for any purpose other than resale), or in the business of making sales for storage, use, or other consumption. Thus, once a retailer makes a sale at retail, thereby incurring sales tax liability, any future sales will not be subject to the sales tax as by definition the purchaser will not be one who bought for the purpose of resale and therefore will not be a retailer.

noted that statutes purporting to grant exemption from taxation are to be strictly construed against the taxpayer and in favor of the public unless in their terms they disclose clearly an intent to grant an exemption. *See also Preservation Soc'y of Newport County* v. *Assessor of Taxes,* 99 R. I. 592, 209 A.2d 701 (1965). We believe the general purpose of this chapter is to impose on any tangible personal property sold for any purpose other than resale a single tax of 5 percent of the market value of the property. Given this purpose, and the specific language of the relevant statutory sections, it is our opinion that the taxpayer may not take advantage of §44-18-34.

First of all, the taxpayer is not a retailer under the definition of §44-18-15. Thus, the gross receipts from the ultimate sale of the taxpayer's boat will not be subject to a sales tax. This in and of itself is arguably enough to take the instant situation out of §44-18-34, but there is a more compelling reason. Section 44-18-7(A) defines a sale as

> "Any transfer of title or possession, exchange, barter, lease, or rental, conditional or otherwise, in any manner or by any means of tangible personal property for a consideration. 'Transfer of possession,' 'lease,' or 'rental' includes transactions found by the tax administrator to be in lieu of a transfer of title, exchange, or barter."

If this section is interpreted to treat all rentals as sales, even those that in no sense take the place of a transfer of title, the second sentence of §44-18-7(A) becomes entirely superfluous. In construing a statute we are obligated to give effect to every part of the statute if it is workable and does not result in absurdity or inconsistency. *Ewing* v. *Tax Assessors,* 90 R. I. 86, 155 A.2d 61 (1959). The better interpretation would appear to be that this subsection was intended to include only transfers of title, exchanges, or barters as sales, but if a transaction were

set up to be ostensibly a mere transfer of possession, lease or rental, while in actual economic fact it was in lieu of a transfer of title, exchange, or barter, the tax administrator might in his discretion treat it as a sale. This construction is reinforced by the fact that §44-18-7 sets out a variety of specific situations where what amounts to a rental of property combined with a sale of services is specifically defined to be a sale. We therefore conclude that §44-18-7(A) was intended to exclude short-term rentals, not in lieu of a transfer of title, from the definition of a sale and thus from the ambit of the sales tax.[5]

While §44-18-7(A) gives the administrator broad discretion to determine what constitutes a transaction in lieu of a transfer of title, his discretion is not unbounded. His determination must be reasonable, and in the instant case where the taxpayer was merely chartering its boat for periodic sportfishing trips to a variety of customers, it is not reasonable to treat this as a transaction in lieu of a transfer of title.

As the taxpayer's rental income was not properly subject to the imposition of a sales tax, and the taxpayer is not otherwise a retailer who would be subject to a sales tax on the ultimate sale of the boat, the taxpayer does not come within the exemption created by §44-18-34.[6] He is

---

[5]See Annot., *Sales Tax—Right to Possession*, 172 A.L.R. 1317 (1948) for cases interpreting similar provisions to exclude short-term rentals.

[6]It may be noted that if G. L. 1956 (1970 Reenactment) §44-18-34 were held to govern the instant situation, the taxpayer would be able, by chartering its boat only a few times a year, to pay a minimal sales tax on the rental received, while making personal use of the boat. When the boat was ultimately sold, it would be at a greatly depreciated price, and therefore the tax liability of the seller or purchaser would be relatively small. The gross receipts from the rentals plus those from the sale could well be a mere fraction of the present sales price of the boat, thereby defeating the basic purpose of this chapter.

therefore liable for a use tax at the rate of 5 percent of the sales price of the boat under §44-18-20.[7]

Finally, the taxpayer argues that the administrator is without the power to increase the amount of his determination once the taxpayer has requested an administrative hearing under §44-19-17. While there appears to be some confusion as to whether the last sentence of §44-19-17, which specifically gives the administrator the right to increase his determination, is properly included in the 1970 Reenactment of the General Laws of Rhode Island, we believe this power is implicit in the section's grant of authority to the administrator to determine the correct amount of the tax.

We therefore find the administrator's redetermination of the tax to be in furtherance of his statutory authority.

The petition for certiorari is granted, the judgment entered in the Superior Court is quashed, and the case is remitted to the Superior Court for the entry of judgment in accordance with this opinion.

Mr. Justice Joslin, with whom Mr. Justice Kelleher joins, dissenting. The question before us is whether the taxpayer, who in 1970 acquired a boat for use in its business of chartering boats for sportfishing, is liable for a sales tax measured by the rental payments received from chartering that boat or for a use tax based upon its cost price. Neither party disputes that under the pertinent taxing statutes boats should be treated no differently from other tangible personal property, and that the same prin-

---

[7]General Laws (1970 Reenactment) §44-18-20, reads in part:
"Use tax imposed.—* * *
"An excise tax is hereby imposed on the storage, use, or other consumption in this state of a motor vehicle, a boat, an airplane or a trailer purchased from other than a licensed motor vehicle dealer or other than a retailer of boats, airplanes or trailers respectively, at the rate of five per cent (5%) of the sale price of such motor vehicle, boat, airplane or trailer."

ciples obtain here as would apply if the taxpayer were an automobile rental agency like Hertz or Avis and the property rented were an automobile instead of a boat.

The positions taken by the parties are straightforward, uncomplicated, and substantially in accord. Implied in their briefs and oral arguments is their agreement that a "sale" as defined by G. L. 1956 (1970 Reenactment) §44-18-7(A) includes a rental or lease of tangible personal property[1], that a retailer regularly engaged in the business of renting tangible personal property for a consideration may acquire the rental property tax-free by furnishing his supplier with a resale certificate prescribed by §44-18-25, that such a retailer is obliged under §44-19-1 to obtain a sales tax permit, and that he must add to the rentals charged a sales tax at the rate imposed by §44-18-19. Regulations issued by the administrator concur with those positions.[2]

---

[1]General Laws 1956 (1970 Reenactment) §44-18-7(A) defines "sales" as follows:

"A. Any transfer of title or possession, exchange, barter, lease, or rental, conditional or otherwise, in any manner or by any means of tangible personal property for a consideration. 'Transfer of possession,' 'lease,' or 'rental' includes transactions found by the tax administrator to be in lieu of a transfer of title, exchange, or barter."

[2]The summary of the Rhode Island Sales and Use Tax Act found in the regulations issued by the tax administrator says that the sales tax applies to:

"(e) The leasing or renting of tangible personal property, such as bicycles, typewriters and other business machines, trucks, automobiles * * * and other personal property." *Regulations, Rules & Bulletins Issued by the Tax Administrator under the Sales & Use Tax Law* at 9 (1968).

Those regulations also provide that:

"Under the provisions of Section 44-18-7 of our sales and use tax law the word 'sale' is construed to mean an actual transfer of title *or* rental *or* lease of tangible personal property by a person who is regularly engaged in the business of making sales of tangible personal property and/or regularly engaged in the business of leasing or renting tangible personal property.

The parties disagree only on whether, and if so under what conditions, a retailer regularly engaged in the business of renting tangible personal property who fails to pay a sales tax on rental receipts within a specified time becomes liable for a use tax. The administrator contends that §44-18-27[3] and §44-19-10[4] do not distinguish between such a retailer and one engaged in the business of selling tangible personal property who incidentally rents such property while holding it for sale. He further argues that those sections, fairly read, require (1) that a retailer, whether engaged in the business of selling or renting, elect

"Accordingly, both such persons are obliged to obtain a sales tax permit; both are obligated to add and collect the tax based either on the selling price of the property sold by them *or* based on the rental charge made by them.

"Moreover, both may acquire such property (to be sold *or* rented *or* leased by them) from their suppliers tax-free by furnishing such suppliers with resale certificates." *Regulations, Rules & Bulletins Issued by the Tax Administrator under the Sales & Use Tax Law* at 69 (1968).

[3]General Laws 1956 (1970 Reenactment) §44-18-27 says:

"If the sole use of the property, other than retention, demonstration, or display in the regular course of business, is the rental of the property while holding it for sale, the purchaser may elect to pay the tax as measured by the amount of the rental charged rather than as measured by the cost of the property to him. Upon a subsequent sale of such property, however, the person making the sale shall include the full amount of the selling price in his gross receipts and shall pay the tax thereon."

[4]General Laws 1956 (1970 Reenactment) §44-19-10 provides in pertinent portion that:

"The taxes imposed by chapter 18 of this title shall be due and payable to the tax administrator monthly on or before the twentieth day of the month next succeeding the month for which return is required to be made. On or before the twentieth day of each month, a return for the previous month shall be filed with the tax administrator in such form as said tax administrator may prescribe. For purposes of the sales tax a return shall be filed by every person engaged in the business of making retail sales, the gross receipts from which are required to be included in the measure of the sales tax."

on or before the 20th day of the month next following acquisition of the property to pay either a sales or a use tax, and (2) that failure to do so results in a relinquishment of that right of election to the administrator, who in this case opted to impose the use tax.

In response, the taxpayer indicates at the outset that the administrator's position in this case and that promulgated in his regulations are at odds.[5] It argues further—and I find its argument the more convincing—that §44-18-27,[6] if read in *pari materia* with §44-18-26,[7] makes clear that the election provided therein applies only to retailers engaged in the business of selling tangible personal property who make incidental rentals pending sale, and not to those engaged in the business of renting such property to consumers.

For reasons that I find difficult to fathom, the majority reject the contentions of both parties, ignore the department regulations, and proceed on a tangent of their own leading them to the same result reached by the administrator. They conclude "* * * that §44-18-7(A) was intended to exclude short-term rentals * * * from the defi-

---

[5]Those regulations provide:

"Any retailer who fails to do so [make the requisite election by showing that within the time prescribed by law he has included in his sales tax return the taxes measured by the cost of the property to him] *shall be deemed to have elected to pay the tax as measured by the amount of rental charges which he makes.*" (Emphasis added.) *Regulations, Rules & Bulletins Issued by the Tax Administrator under the Sales & Use Tax Law* at 70 (1968).

[6]*See* note 3, *supra*.

[7]General Laws 1956 (1970 Reenactment) §44-18-26 reads as follows:

"If a person who gives a certificate consumes or makes any storage or use of property so purchased other than retention, demonstration, or display while holding it for sale in the regular course of business the storage, use, or consumption shall be subject to the sales or use tax, as the case may be, as of the time the property is first so stored, used, or consumed, and the cost of the property to the purchaser shall be the measure of the tax."

nition of a sale and thus from the ambit of the sales tax," and that because the taxpayer's rental income therefore does not come within the exemption created by §44-18-34[8] it is subject to a use tax. Obviously, those conclusions can be no sounder than their foundations, and they seem to me to be based on an unusually labored construction of clear and unambiguous language, which conveys a plain, sensible, and contrary meaning that is accepted both by the taxpayer and by the administrator in his department regulations. *See* notes 1 and 2, *supra*. Once it is thus accepted that §44-18-7(A) means what it says when it defines "sales" as including a "rental," and that a tax based upon rentals must be collected by those engaged in the rental business, it necessarily follows that §44-18-34 exempts such a retailer from paying a use tax based upon the acquisition cost of the rental property.

I rest my disagreement with the majority, however, not only on their construction of §44-18-7(A), but also on their total disregard for what the administrator conceded in oral argument was the longstanding department practice of requiring persons regularly engaged in the business of renting tangible personal property to collect sales taxes from their lessees based upon rental charges. That practice is confirmed by the department regulations.[9] I recognize, of course, that the administrative practice and the department regulations do not have the force and effect of law, and that they serve merely as guideposts for the

---

[8]General Laws 1956 (1970 Reenactment) §44-18-34 reads:

"The storage, use, or other consumption in this state of property, the gross receipts from the sale of which are required to be included in the measure of the sales tax, shall be exempted from the use tax."

[9]The administrator concedes that the substance of the regulations quoted in note 2, *supra,* was adopted in the form of a ruling at least as early as November 24, 1958, and reference to CCH State Tax Rep., R. I. ¶63-872 (1969) reveals that it was promulgated as a regulation on December 1, 1965, if not before.

benefit of the taxpayers and the department entrusted with the duty of enforcing the sales and use tax law. But if the meaning of §44-18-7(A) is doubtful—as the majority contend it is—that practice and those regulations should receive great weight from us in resolving that section's ambiguity, particularly in this instance because they have endured the legislative reenactment and amendment of those statutes giving rise to their adoption. *See* 3 Sutherland, *Statutory Construction* §66.04 at 192-93 (4th ed. 1974); *Trice* v. *City of Cranston,* 110 R. I. 724, 730, 297 A.2d 649, 652 (1972); *Broderick* v. *Keefe,* 112 F.2d 293, 296 (1st Cir.), *cert. dismissed,* 311 U.S. 721, 60 S.Ct. 1107, 85 L.Ed. 470 (1940); *Liss* v. *Goodman,* 224 Md. 173, 179, 167 A.2d 123, 126 (1960); *In re Gillmore's Estate,* 101 N. J. Super. 77, 85, 243 A.2d 263, 267 (1968).

For these reasons I reject the majority's rationale, and because I believe the taxpayer's position more soundly premised than the tax administrator's, I respectfully dissent.

*John G. Coffey, Jr.,* for plaintiff-respondent.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, *Perry Shatkin,* Principal Legal Officer (Taxation), for defendant-petitioner.