369 A.2d 1101 (1977)
GREAT LAKES DREDGE AND DOCK COMPANY,
v.
John H. NORBERG, Tax Administrator.
No. 75-86-M.P.
Supreme Court of Rhode Island.
February 23, 1977.
*1103 Worrell & Hodge, Lee A. Worrell, Providence, for petitioner; McHugh, Heckman, Smith & Leonard, Martin J. McHugh, of the. New York Bar, New York City, of counsel.
Julius C. Michaelson, Atty. Gen., Allen P. Rubine, Asst. Atty. Gen., Perry Shatkin, Chief Legal Officer (Taxation), Providence, for respondent.

OPINION
DORIS, Justice.
This is a certiorari proceeding brought by Great Lakes Dredge and Dock Company (hereinafter "petitioner") to contest the assessment of a use tax, pursuant to G.L. 1956 (1970 Reenactment) chapters 18 and 19 of title 44, on certain property used by the petitioner in its dredging operations in this state. The respondent is John H. Norberg, in his capacity as tax administrator.
The record certified to us indicates that petitioner is a New Jersey corporation with offices in several states that has for some years been qualified to do business in Rhode Island. In July of 1967, petitioner was awarded a contract by the Army Corps of Engineers to deepen the navigable channel in the Providence River. Work commenced in August of 1967, and continued through October of 1970. The performance of the contract entailed the use of dredges, to scoop material from the river bottom, scows, to contain and transport the dredged material, and tugboats, to tow the loaded scows to a dumping ground at sea and back again.
In order to finish the project on time petitioner found it necessary during the last year of performance to augment its own fleet of tugs with four chartered tugs. One tug, under a so-called "bareboat charter", was leased without a master or crew. The petitioner operated that tug with its own personnel. The other three tugs were leased with masters and crews provided by >the respective lessors. During the course of the dredging operation petitioner also took delivery of four newly constructed scows. These were immediately put to use on the Providence River project.
Following completion of the work the Division of Taxation conducted an audit of petitioner's records and, finding that taxable use had been made of the above property, issued a deficiency determination. After an administrative hearing thereon, respondent ruled that a use tax of $146,887.59 was due, along with interest in the amount of $22,299.17 and a 10 percent penalty of $14,688.76. The petitioner paid the tax under protest and then filed a complaint in Superior Court to obtain a refund pursuant to G.L. 1956 (1969 Reenactment) § 42-35-1 et seq. The Superior Court justice upheld respondent's decision in every respect, and petitioner sought review of that judgment by certiorari before us.
The petitioner's objections to respondent's determinations may be summarized as follows : that the rental of the three manned chartered tugs was not a taxable "use" of the tugs; that the petitioner was a nonresident and therefore exempt from taxation on any of the subject property; that the tax statute places an unconstitutional burden on interstate commerce; and that the penalty was improperly assessed. For the reasons which follow, we find petitioner's objections to be without merit.

I
We first consider the tax on the three manned tugs. A use tax is imposed by § 44-18-20 on the "storage, use, or other consumption in this state of tangible personal property * * * purchased from any retailer" at the rate of 5 percent of the purchase price. The use tax is complementary to the sales tax. It is intended to have application to transactions which, while susceptible to the imposition of a sales tax, would in fact otherwise not be subjected to such a tax because of exception *1104 and exemption provisions protecting against double taxation. Capitol Bldg. Co. v. Langton, 101 R.I. 131, 221 A.2d 99 (1966). Liability for the payment of the use tax is imposed upon the purchaser of the property by § 44-18-21. A sale, and hence by implication a purchase, is defined by § 44-18-7 to include a lease or rental which has the economic effect of a transfer of title. See Sportfisherman Charter, Inc. v. Norberg, 115 R.I. 68, 340 A.2d 143 (1975).
The petitioner does not deny that a lease may be treated as a taxable sale.[1] The basis of petitioner's objection is that under the terms of the charter it did not have sufficient control over the three manned tugs to constitute a taxable "use" thereof within the meaning of the statute. The operative statutory provision is § 44-18-10, which defines "use" as follows : "Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property * * *."
As noted above, the dredges and scows were operated by petitioner's employees, whereas the masters and crews of the three tugs were employed by the lessors of the tugs. In the course of the work, the scows would be moored alongside the dredges and filled with dredged material. At that point, petitioner's employees would direct one of the tugs to pick up the scow. Sometimes petitioner's employees would first shuttle the loaded scow to a mooring buoy, and then direct the tug to pick it up there. The scow would then be towed to the dumping ground. The master of each tug had full navigational control during the towing; he determined the precise manner in which the scows would be transported. Upon return, petitioner's employees would tell the tug master where the empty scow was to be moored, and the entire process would then be repeated. Maintenance matters concerning the tugs such as the provision of fuel and supplies were under the control of the individual tug masters.
Given this set of facts we cannot agree with petitioner that it exercised insufficient control over the tugs to amount to a taxable "use." Here the primary function of the tugs, indeed their only function, was to tow the scows from the dredging area to sea and back again. The right to direct where and when the tugs should pick up and deposit the scows is thus not insignificant and of marginal relevance, as petitioner argues. We note that the statute does not require total or even substantial control; the exercise of any "right or power" over tangible property constitutes a taxable "use" of that property. The fact that the masters of the tugs concurrently exercised a substantial degree of control over the tugs does not change this result.
We have been unable to find any cases directly in point. However, the decisions of other courts do reflect the fact that little control over rented property is required to establish a taxable use thereof. See State Tax Comm'n v. Peck, 106 Ariz. 394, 476 P.2d 849 (1970) (patrons of laundromat have sufficient control of washing machines to constitute "use"); Buckley Funeral Home, Inc. v. City of New York, 199 Misc. 195, 105 N.Y.S.2d 478 (Sup.Ct.1948) (funeral director's power to direct and control funeral procession sufficient to establish taxable use of rented, chauffered limousines therein).
The petitioner maintains that our interpretation of the term "use" ought to be guided by the regulations issued by the tax *1105 administrator.[2] It is argued that the towing here in question is analogous to the situation described in the regulation wherein a truck and driver are hired to haul a specific load. However, the regulations clearly distinguish between the nontaxable rental of a truck and driver for a specific load, and the taxable rental for a specific time period. Here, the rental was of the latter sort. Moreover, we see a significant difference between the one-time rental for a specific job contemplated by the regulation, and the situation presented here where the charter extended over a considerable period of time and the details of its performance varied from day to day.
To further support its claim that the charters were nontaxable within the meaning of the regulations, petitioner calls to our attention cases decided under admiralty law holding that a lessee in petitioner's position does not have "possession" of the leased vessels. The decisions in those cases, however, relate to the tort liability of the respective parties. The degree of control required to establish "possession" for that purpose is not controlling as to the degree required to justify the imposition of a use tax.
Accordingly, we find no error in the Superior Court justice's affirmation of respondent's decision that petitioner made a taxable use of the three manned tugs within the meaning of § 44-18-10.

II
We next turn to petitioner's claim to an exemption as a nonresident. This claim, although also applicable to the three manned tugs discussed above, is particularly pressed with respect to the unmanned tug and the four scows. The scows constituted tangible personal property purchased from a retailer and used in this state by petitioner. Their use thus clearly comes within the plain meaning of the taxing statute. Similarly, since there is no question that petitioner had supervision and control over the unmanned chartered tug, the use of that tug in this state was subject to a use tax. Sport fisherman Charter, Inc. v. Norberg, supra.
The petitioner argues, however, that § 44-18-36 exempts its use of both the unmanned tug and the four scows from the tax. That section provides in part :
"The storage, use, or other consumption in this state of the following shall also be exempted from the use tax :
* * * * * *
"B. Property purchased by the user while a non-resident of this state, and *1106 brought into the state by him for his own use."
The petitioner maintains that it qualifies as a nonresident because it is incorporated in New Jersey, and it is "well settled," to use petitioner's phrase, that a corporation may be a resident only of its state of incorporation. Merely qualifying to do business and thereafter doing business in Rhode Island, it is argued, is not sufficient to elevate a foreign corporation from the status of nonresident to that of resident. We disagree.
Although more often than not the state of its incorporation is deemed to be the sole residence of a corporation, there is no universal rule to that effect. Whether a foreign corporation doing business in this state thereby becomes a "resident" depends entirely on the connection in which the question arises. Many courts have viewed the term "residence" in this way; a typical statement of the principle may be found in Home Savings & Loan Ass'n v. Iowa City Inn, Inc., 260 Iowa 1321, 152 N.W.2d 588, 590 (1967) :
"The determination of whether a corporation organized under the laws of another state is a resident of Iowa must be made within the meaning of the respective statute under consideration. The term is dependent upon the context of the statute in which it is used and the purpose and object to be attained."
Accord, Jackson Sec. & Inv. Co. v. State, 241 Ala. 288, 292, 2 So.2d 760, 764 (1941); Kimmerle v. City of Topeka, 88 Kan. 370, 373, 128 P. 367, 368 (1912); State v. Preferred Accident Ins. Co., 149 So.2d 632, 639 (La.App.1963); Sease v. Central Greyhound Lines, Inc., 281 App.Div. 192, 118 N.Y.S.2d 433, 441 (1952). See 36 Am.Jur, 2d Foreign Corporations § 37 (1968).
When viewed with this principle in mind, the cases upon which petitioner relies to establish nonresident status are not persuasive. They are concerned with the meaning of corporate "residence" as it relates to either service of process, venue, or federal diversity jurisdiction. Manifestly the controlling considerations in those instances are quite different from the considerations relevant to the imposition of a sales and use tax.
We think it appropriate to note at this point that the provision in question, § 44-18-36(B), is an exemption. Statutes purporting to grant an exemption from taxation are to be strictly construed against the taxpayer and in favor of the public unless in their terms they disclose clearly an intention to grant an exemption. Sport fisherman Charter, Inc. v. Norberg, supra; Preservation Soc'y v. Assessor of Taxes, 99 R.I. 592, 209 A.2d 701 (1965).
Turning to the statutory context in which the exemption appears, it is apparent that the sales and use tax statute is quite broad. As noted above, the sales tax and the use tax operate in a complementary fashion. Although not mutually exclusive, the sales tax generally applies to purchases within the state, and the use tax to purchases which occur out of state but which are in effect "substitutes" for purchases in this state in the sense that in both cases the property is used in this state. The purpose of a use tax is twofold; to prevent tax avoidance, and to insure that the sales tax will not result in an unfair burden being placed upon the local retailer who must compete with retail dealers in other states who are exempt from the sales tax. Henneford v. Silas Mason Co., 300 U.S. 577, 581, 57 S.Ct. 524, 526, 81 L.Ed. 814, 818 (1936); Union Oil Co. v. State Bd. of Equalization. 60 Cal.2d 441, 34 Cal.Rptr. 872, 386 P.2d 496 (1963).
The purpose of the exemption in § 44-18-36(B) is apparently to prevent taxation in cases where it would be unduly burdensome and where tax avoidance or an unfair competitive advantage would be unlikely; for example, where one who formerly *1107 resided elsewhere decided to move to Rhode Island and bring with him all of his previously acquired personal property. The limitation of the exemption solely to nonresidents can be seen as an attempt by the Legislature to exempt those who, as a group, would not typically make purchases here or do extensive business here, and whose out-of-state purchases would therefore be unlikely to result in significant tax avoidance or unfair competitive advantage.
It is with this legislative purpose in mind that we must interpret the scope of the term "nonresident" as it is used in § 44-18-36(B). In our view, when used with reference to foreign corporations the term must be taken to imply an absence of significant contacts and a lack of consistent operation in this state. Here, petitioner was qualified to do business in this state, and by its own admission had been so qualified "for years". With respect to this dredging project alone it transacted business in this state for a period in excess of three years. In connection with the work maintained an office here. During this period petitioner received the protection of this state and reaped the economic rewards of doing business here. Therefore, we are of the opinion that petitioner, as a foreign corporation doing substantial business in this state, is not within the intended meaning of the term "nonresident" as it is used in § 44-18-36(B).
We also think it significant that, as the Superior Court justice aptly pointed out in her opinion, if foreign corporations doing business here were exempted from the use tax as nonresidents, it is doubtful whether any corporation would incorporate in this state. This could hardly have been the result intended by the Legislature.
Since petitioner is not a nonresident, the exemption in § 44-18-36(B) does not apply and cannot operate to relieve petitioner from liability for the tax assessed upon its use of the tugs and scows in question.[3]

III
The petitioner also claims that the dredging equipment was being used in interstate commerce and so was constitutionally immune from taxation by the state. However, the cases upon which petitioner relies to establish the interstate nature of dredging are concerned with the meaning of interstate commerce as that term is used in the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq. (1965). They are as a result totally lacking in persuasive force. The range of activities in interstate commerce which the federal government may constitutionally regulate is obviously not coextensive with the range of activities which is beyond the constitutional power of a state to tax. The significant difference in the meaning of "interstate commerce" in these two contexts was recognized in A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 521, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638, 1646 (1942), where the court said : "Similarly, enterprises subject to federal industrial regulation may nevertheless by taxed by the States without putting an unconstitutional burden on interstate commerce."
It is important to recognize that where the power of a state to impose a use tax is involved, the mere fact that property is used for interstate commerce or has come into an owner's possession as a result of interstate commerce does not necessarily act as a constitutional bar. Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960). See generally Colonial Pipeline Co. v. Traigle, 421 U.S. 100, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975). Where a taxpayer's activities relate to interstate *1108 commerce, the question is whether the local use of the property is sufficiently outside the stream of interstate commerce so that its taxation does not unduly impinge thereon. The broad extent of a state's power to levy a use tax on property which, although used in the course of interstate commerce, is momentarily removed therefrom and used locally, is illustrated by United Air Lines, Inc. v. Mahin, 410 U.S. 623, 93 S.Ct. 1186, 35 L.Ed.2d 545 (1973). There, the temporary storage of aviation fuel at an airport ground facility prior to its use in interstate flights was held to be sufficiently outside the stream of interstate commerce so as to be properly subject to a use tax. We have no doubt that petitioner's use of dredging equipment for many months within this state constituted a local activity which it was within the power of this state to tax. The same question was addressed in In re Atlantic Gulf & Pacific Co. v. Gerosa, 16 N.Y.2d 1, 261 N. Y.S.2d 32, 209 N.E.2d 86 (1965), where dredging activities lasting 1½ months were held to be outside the stream of interstate commerce. This result was also reached in In re Great Lakes Dredge & Dock Co. v. Department of Taxation & Finance, 39 N.Y.2d 75, 382 N.Y.S.2d 958, 346 N.E.2d 796 (1976), where the court said:
"Dredging is, generally speaking, confined to a specified, limited area for the purpose of constructing new waterways or, as was the case here, effecting repairs of old waterways. Thus, while vessels may by their very nature be mobile in themselves and movable from one State or country to another, the movement is incidental to the localized activity of dredging, and it is the localized nature of this activity which permits assessment of the tax against petitioner." Id. at 79, 382 N.Y.S.2d at 960, 346 N.E.2d at 798.
Nor is petitioner's position helped by the fact that the dredging was performed in a navigable waterway which carried interstate commerce. In In re Great Lakes Dredge & Dock Co. v. Department of Taxation & Finance, supra, this circumstance was held not to bring dredging operations within a statutory use tax exemption for vessels engaged in interstate commerce.
With respect to petitioner's argument regarding multiple taxation, it is clear that where, as here, there is no evidence that any other jurisdiction has imposed a sales or use tax on the property in question, no constitutional problem of burdening interstate commerce by multiple taxation confronts us. Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939). For the above reasons, we hold that the taxation of petitioner's use of the equipment in question was without constitutional infirmity.

IV
Finally, we consider the propriety of the penalty assessed by respondent. A 10 percent tax on the entire amount of the deficiency is authorized by § 44-19-12, in the event that any part of the deficiency is due to negligence or intentional disregard of the provisions of the statute. Section 44-19-14 calls for such a penalty, even in the absence of negligence or intentional disregard of the statute, where a deficiency is found and no tax return was filed by the taxpayer.
The respondent found that petitioner's failure to pay the tax on the unmanned tug and on another item of equipment despite having shown such a tax to be properly accrued on its books brought petitioner within § 44-19-12. Before the Superior Court justice, respondent argued that the penalty was also proper under § 44-19-14, since there was no evidence that petitioner filed a tax return. Before us, petitioner claims that its actions were justifiable and that it was without fault.
It must be remembered that when reviewing a decision of an administrative agency by way of certiorari, we will not engage in factfinding. Prete v. *1109 Parshley, 99 R.I. 172, 206 A.2d 521 (1965). In this case, it is our duty to examine the record to determine whether or not there is any competent evidence to support the Superior Court justice's findings sustaining the respondent's findings regarding the absence of a tax return or regarding the petitioner's negligent or intentional disregard of the law. Lemoine v. Department of Mental Health, Retardation & Hosps., 113 R.I. 285, 320 A.2d 611 (1974). In doing so, we find such evidence. Accordingly, we hold that assessment of the penalty was without error.
The petition for certiorari is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case are ordered returned to the Superior Court.
NOTES
[1] Although in Sportfisherman Charter, Inc. v. Norberg, 115 R.I. 68, 340 A.2d 143 (1975), we held that a short-term rental not in lieu of a transfer of title was not a "sale" subject to the sales and use tax, petitioner does not object to the imposition of the tax on that ground, nor did petitioner press that claim below. Hence, we need not decide whether the leases here in question were properly treated as sales.
[2] The regulation in question reads as follows :

"In order to constitute a taxable transaction, possession of the property must be transferred to the lessee. Possession shall be deemed to have passed to the lessee whenever the property is under his control or direction whether an operator is furnished by the lessor or not. For example, the rental of a truck and driver for a specific period to perform whatever work the lessee directs is a taxable transaction and the entire consideration, including the charge for the driver, is subject to the tax. However, the furnishing of equipment and an operator to peform a specific job in the manner to be determined by the owner of the equipment or his operator shall be considered a service not subject to the tax. For example, if a truck and driver are employed to haul a particular load from one location to another, ,the tax will not be due.
"All transactions for the use of equipment and operator in which the consideration is determined on a time basis will be presumed to constitute leases or rentals. Billing on an hourly, daily, weekly, monthly or other time basis shall be considered prima-facie evidence that the transaction was for the lease or rental of equipment. In the absence of a written contract entered into prior to the use of the equipment clearly showing that payments thereunder are for the performance of a specific job and not for the lease or rental of equipment, the burden of proof is on the taxpayer to show that no rental or lease of equipment in fact occurred." Regulations, Rules and Bulletins Issued by the Tax Administrator Under the Sales and Use Tax Law, at 98 (December 10, 1968).
[3] The petitioner argues at some length that despite regulations to the contrary, a nonresident need not engage in a prior use of property outside of this state to qualify for the exemption here at issue, and that a nonresident may not be taxed for the use of leased property unless that least was made within this state. In view of our decision that petitioner is not a nonresident, we need not pass on these claims.