**MOSSBERG–HUBBARD DIVISION OF WANSKUCK**

v.

**John H. NORBERG, Tax Administrator.**

**No. 79–229–M.P.**

Supreme Court of Rhode Island.

July 22, 1981.

---

Hinckley, Allen, Salisbury & Parsons, H. Peter Olsen, Mark A. Dingley, Gordon P. Cleary, Providence, for petitioner.

Dennis J. Roberts, II, Atty. Gen., Perry Shatkin, Chief Legal Officer (Taxation), Providence, for respondent.

OPINION

BEVILACQUA, Chief Justice.

This is a petition for certiorari to review a District Court judgment affirming a decision of the tax administrator assessing a sales tax against the petitioner, Mossberg-Hubbard Division of Wanskuck (Mossberg-Hubbard), in the amount of $16,389.39 plus any applicable interest.

The relevant facts are not in dispute. Mossberg-Hubbard, a division of Wanskuck company with a place of business in Cumberland, Rhode Island, manufactures packaging reels and spools for the wire and textile industries and sells them to customers both in and outside the State of Rhode Island. Certain of the out-of-state customers of Mossberg-Hubbard maintain their own fleets of trucks which are either owned by the individual customer or by a corporation controlled by the customer. On sales to such customers, the invoice reflects that the shipment of goods between Mossberg-Hubbard and the customer is f.o.b. the customer's plant outside the State of Rhode Island. Therefore, the title and the risk of loss remain with Mossberg-Hubbard until the goods have reached the customer's out-of-state plant. It follows that because the risk of loss is borne by Mossberg-Hubbard through an agreement with their out-of-state customer, Mossberg-Hubbard insures the goods against loss during shipment. Moreover, because the out-of-state customer bears the cost of freight by using their own trucks, Mossberg-Hubbard credits the freight charge back to the customer on the invoice.

As a result of an audit, the tax administrator sent a notice of deficiency in the amount of $18,279.24 to Mossberg-Hubbard

for uncollected sales taxes on the transactions described above. Mossberg-Hubbard thereupon requested a hearing on the matter and sought a refund of the deficiency. Relying on an agreed statement of facts submitted by the parties, the tax administrator in a written decision abated the assessment by $1,889.85 but denied a refund of the remaining $16,389.39. Pursuant to G.L. 1956 (1980 Reenactment) § 44–19–18, Mossberg-Hubbard appealed the decision of the tax administrator to the District Court. The District Court trial justice affirmed the decision of the tax administrator. Mossberg-Hubbard thereupon sought and was granted a writ of certiorari by this court. *Mossberg-Hubbard Division of Wanskuck v. Norberg*, R.I., 404 A.2d 848 (1979).

The issues raised in this appeal are these: (1) whether the transfer in this state of reels and spools from Mossberg-Hubbard to their out-of-state customers constitutes a taxable sale pursuant to G.L. 1956 (1970 Reenactment) § 44–18–7(A), as amended by P.L. 1973, ch. 263, § 1,[1] and (2) whether the exercise of the state's taxing power on the transactions in question effectively establishes a double tax and, hence, an unconstitutional burden on the flow of interstate commerce.

I

Mossberg-Hubbard contends first that the transfer of goods in Rhode Island to an out-of-state customer f.o.b. the customer's plant and the transportation of those goods by vehicles owned by the customer do not constitute transfers of title or possession and hence do not constitute taxable sales under G.L. 1956 (1980 Reenactment) § 44–18–7(A). The tax administrator argues that because the transfer of possession of the goods was accomplished in Rhode Island and because the vehicles used for delivery were at all times in the control of Mossberg-Hubbard's out-of-state customers, a taxable sale did occur within the meaning of § 44–18–7(A).

Section 44–18–18 imposes a tax on sales at retail which are defined as sales for purposes other than resale. *See* G.L. 1956 (1980 Reenactment) § 44–18–8. Section 44–18–7(A) defines a sale as

"[a]ny transfer of title or possession, exchange, barter, lease, or rental, conditional or otherwise, in any manner or by any means of tangible personal property for a consideration. 'Transfer of possession' * * * includes transactions found by the tax administrator to be in lieu of a transfer of title, exchange or barter."

In construing this section, we have held that a mere transfer of possession, which does not have the economic effect of a transfer of title, will not be treated as a sale. *See Sportfisherman Charter, Inc. v. Norberg*, 115 R.I. 68, 73, 340 A.2d 143, 146 (1975). However, when "a transaction [is] set up to be ostensibly a mere transfer of possession, lease or rental, while in actual economic fact it was in lieu of a transfer of title, exchange, or barter, the tax administrator might in his discretion treat [the transaction] as a sale." *Id.* at 73–74, 340 A.2d at 146. In determining what constitutes a transaction in lieu of a transfer of title, the tax administrator is afforded broad discretion; his determination need only be reasonable. *Id.* at 74, 340 A.2d at 147.

Our review of the District Court decision affirming the tax assessment is limited to a review of any question of law involved. G.L. 1956 (1977 Reenactment) § 42–35–16. We examine the record to determine whether there is "any competent evidence * * * to support the decision of the trial justice and whether his decision is affected by any errors of law." *G. H. Waterman & Co., Inc. v. Norberg*, R.I., 412 A.2d 1132, 1134 (1980); *see Herald Press, Inc. v. Norberg*, R.I., 405 A.2d 1171, 1177 (1979).

Mossberg-Hubbard relies on the provisions of the Rhode Island Uniform Commercial Code for the proposition that the transfer of goods from Mossberg-Hubbard to its

---

1. This provision has been reenacted recently by P.L. 1980, ch. 366, § 1, and is codified at G.L. 1956 (1980 Reenactment) § 44–18–7(A). Hereinafter, we will refer to the 1980 Reenactment of this provision.

out-of-state customers is neither a transfer of title nor a transfer of possession in lieu of title. Mossberg-Hubbard contends that pursuant to the f.o.b. destination contract between the parties in the instant case, the out-of-state customer's duty to pay is conditioned upon the proper delivery by Mossberg-Hubbard to the out-of-state plant; the risk of loss and the duty to maintain insurance remain with Mossberg-Hubbard until delivery; Mossberg-Hubbard retains the right to stop shipment at any time before delivery; and the out-of-state customer retains a right to refuse nonconforming goods upon delivery. *See* G.L. 1956 (1969 Reenactment) §§ 6A–2–507(1), 6A–2–319(1)(b), 6A–2–705, and 6A–2–601. Accordingly, Mossberg-Hubbard argues that all of these economic factors do not support the proposition that the transfer of the goods in question was either a transfer of actual title or the economic equivalent to a transfer of title. Mossberg-Hubbard characterizes the transaction as a transfer of "naked custody" for the limited purpose of delivery to the out-of-state customer's plant, a transfer that is not sufficient to support the imposition of a Rhode Island sales tax. Moreover, Mossberg-Hubbard contends that the fact that the goods were delivered in trucks owned by the out-of-state customer does not compel a different result.

We hold, however, that Mossberg-Hubbard's contention that the Uniform Commercial Code is applicable is misplaced. As we have stated previously, "when an administrative agency has interpreted the parameters of particular statutory terms in a field over which it has been given authority, it is not bound by the meaning ascribed to similar concepts in the [Uniform Commercial] Code." *Rice Machinery, Inc. v. Norberg*, R.I., 391 A.2d 66, 74 n.12 (1978); G.L. 1956 (1969 Reenactment) § 6A–2–401, Comment 1.

In the instant case, both the tax administrator and the District Court trial justice cited in their decisions the interpretive sales-tax regulation that states:

"Where tangible personal property pursuant to a sale is delivered in this state to a buyer or an agent of his other than a common carrier the retail sales tax applies notwithstanding that the buyer may subsequently transport the property out of state * * *."

*Regulations and Rules Issued by the Tax Administrator under the Sales and Use Tax Law* at 69 (1977). In addition, the interpretation of "sale" under § 44–18–7(A) makes it clear that it is the "transfer of title or possession" to the purchaser within the state that constitutes the taxable event, regardless of the time and place of the passing of actual title. *See McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. 33, 49, 60 S.Ct. 388, 394, 84 L.Ed. 565, 572 (1940); *Liberty Steel Co. v. Oklahoma Tax Commission*, 554 P.2d 8, 11 (Okl. 1976). Thus, we find that §§ 6A–2–507(1), 6A–2–319(1)(b), 6A–2–705, and 6A–2–601 of the Uniform Commercial Code are not applicable.

■ Furthermore, the record indicates that once the transfer of the reels and spools was made to the out-of-state customer's trucks in Rhode Island, exclusive possession of the merchandise was in the buyer, and at no time thereafter did Mossberg-Hubbard exercise any control or direction of the transaction. Therefore, there is sufficient evidence to support the findings of the trial justice that the transfer of possession of goods in the instant case was one in lieu of a transfer of title.

For us to rule that when a transfer of possession is made in Rhode Island it is not subject to a sales tax, merely because the goods purchased are to be taken to another state in which title will pass according to the contract between the parties, would allow easy avoidance of a tax by a seller who would simply arrange for the buyer to take the goods elsewhere. Furthermore, to approve such a practice would give rise to untold chaos in the administration of the tax laws and to extensive losses of state sales-tax revenue. Thus, we find that there is sufficient legally competent evidence to support the decision of the trial justice.

**1180**

## II

Mossberg-Hubbard contends next that if the tax administrator is permitted to impose a sales tax on the transactions in question, in effect, Mossberg-Hubbard would be subject to a double tax in violation of the commerce clause of the Federal Constitution. *See* U.S. Const. Art. I, § 8, cl. 3. Instead, the tax administrator argues that he simply is asserting authority over the fruits of a transaction consumated within Rhode Island and that the tax is in no way inimical to the commerce clause.

■ We recognize that the commerce clause of the Federal Constitution is a restriction on state regulation of interstate commerce. *Philadelphia & Reading R.R. v. Pennsylvania*, 82 U.S. (15 Wall.) 232, 272, 21 L.Ed. 146, 160 (1873); *Narragansett Wire Co. v. Norberg*, 118 R.I. 596, 600, 376 A.2d 1, 3 (1977). Also, a state may not impose a tax that subjects interstate commerce to the burden of multiple taxation. *Michigan-Wisconsin Pipeline Co. v. Calvert*, 347 U.S. 157, 170, 74 S.Ct. 396, 403, 98 L.Ed. 583, 593–94 (1954); *Narragansett Wire Co. v. Norberg*, 118 R.I. at 600, 376 A.2d at 3; *see McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. at 45, 60 S.Ct. at 391, 84 L.Ed. at 569. However, "neither the Commerce Clause nor the Fourteenth Amendment prevent the imposition of the tax on receipts from an intrastate transaction even though the total activities from which the local transaction derives may have incidental interstate attributes." *International Harvester Co. v. Department of Treasury*, 322 U.S. 340, 344, 64 S.Ct. 1019, 1021, 88 L.Ed. 1313, 1316 (1944). "It is only when the [state] tax operates to regulate commerce between the states * * * to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations." *McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. at 45, 60 S.Ct. at 391, 84 L.Ed. at 569. Furthermore, the purpose of the commerce clause is not to relieve those engaged in interstate commerce from their just share of state tax burdens merely because their cost of doing business increases. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1979, 51 L.Ed.2d 326, 331 (1977) (*citing Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823, 827 (1938)).

■ In the instant case, there is no dispute that the transfers constitute, in part, transactions in interstate commerce. However, we do not agree that the tax administrator is imposing a double tax on Mossberg-Hubbard. The record is devoid of any evidence that indicates that Mossberg-Hubbard is subject to a tax elsewhere. The possibility that Mossberg-Hubbard may incur a tax elsewhere does not compel any contrary result.[2] Absent a showing that Mossberg-Hubbard is being subjected to multiple taxation on its interstate business, we conclude that the imposition of the Rhode Island sales tax does not violate the commerce clause of the United States Constitution. *See Liberty Steel Company v. Oklahoma Tax Commissioner*, 554 P.2d at 11; *cf. International Harvester Co. v. Department of Treasury*, 322 U.S. at 348–49, 64 S.Ct. at 1023, 88 L.Ed. at 1318–19 (probability of tax elsewhere insufficient to strike down local tax).

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, the judgment entered by the District Court is affirmed, and the papers certified to this court are ordered returned to the District Court with our decision endorsed thereon.

---

**2.** In the event Mossberg-Hubbard does incur a tax elsewhere, they may at that time invoke the tax-credit provisions outlined in G.L. 1956 (1980 Reenactment) § 44–18–30–A.