BEAN DREDGING CORPORATION,
Plaintiff/Appellee,

v.

Martha B. OLSEN, Commissioner of Revenue, State of Tennessee,
Defendant/Appellant.

Supreme Court of Tennessee,
at Jackson.

Dec. 14, 1987.

W.J. Michael Cody, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., Nashville, for defendant/appellant.

Boyd L. Rhodes, Jr., Robert Mark Glover, Memphis (Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, of counsel), for plaintiff/appellee.

## OPINION

HARBISON, Justice.

Appellee paid under protest and sued for refund of a use tax levied by the State upon a large dredge and a number of supporting vessels which appellee operated and docked on the Mississippi River within the borders of the state. Exemption was

claimed upon the basis that the equipment was being used in interstate commerce at all times during the tax years involved within the meaning of T.C.A. § 67–6–321.

The Chancellor allowed the exemption and ordered a refund. We reverse except for a small portion of the claim as stated later in this opinion.

The principal vessel, the *Lenel Bean,* is a self-propelled "dustpan" dredge of some 1,385 tons displacement. It was newly commissioned in 1979. Appellee paid neither a sales nor a use tax upon the purchase price of this vessel or upon any of the other supporting units involved in the case with one exception noted hereinafter.

During the three tax years involved in this case, 1980 through 1982, appellee held a large dredging contract with the United States Army Corps of Engineers, under which appellee was to dredge the channel of the Mississippi River between specific mile stations. The southerly terminal point lay south of the Tennessee state line at the mouth of the White River in Arkansas and the northerly one just upstream from Oceola, Arkansas. A significant portion of the territory lay within the borders of Tennessee.

The boundary between Tennessee and Arkansas lies generally in the Mississippi River; but because of shifts in the course of the river over many years, for some distance north of Memphis the river lies entirely within the boundaries of Tennessee. South of Memphis the state boundary runs generally down the middle of the river.

The navigation channel crosses from one side of the river to the other, and it frequently becomes clogged with silt and spoil. Under its contract with the Corps, appellee was to keep the channel dredged during its contract period, the operations usually being conducted when the river was at low level. During periods of high water, the dredge and its accompanying vessels were not used. For several weeks during each of the tax years involved here, the equipment was docked in an old river segment, or oxbow lake, known as McKel-lar Lake, which lies entirely within the boundaries of Shelby County, Tennessee.

Each of the contracts which appellee held with the Corps was for a one-year period. All of the operations of appellee were conducted at the direction of and under the supervision of Corps personnel. The design of the *Lenel Bean* was such that it dredged or vacuumed silt from the bottom of the navigation channel and pumped it out along a pipeline of about 1000 feet in length, lying across some twenty barges to "spoil" areas designated by the Corps of Engineers.

At no time during the three-year period involved here was the *Lenel Bean* or any of the other vessels dry-docked or taken completely out of service. There were significant periods of time during each year, however, when they were not in use in the dredging operations and when they were stored in McKellar Lake. During periods while the equipment was at anchor, maintenance and repairs would be performed as needed, although, as previously stated, the *Lenel Bean* itself was a very new and modern vessel. During protracted periods of docking, many members of the crew would be given leave and only a skeleton crew maintained aboard the equipment. At full strength the *Lenel Bean* carried a crew of forty-five to forty-seven persons.

Undisputed testimony shows that the equipment was idle at the dock at McKellar Lake during the following periods:

May 27, 1980 through June 30, 1980

August 22, 1980 through August 31, 1980

November 7, 1980 through November 17, 1980

June 2, 1981 through July 19, 1981

November 1, 1981 through August 6, 1982

September 23, 1982 through December 31, 1982

The equipment was first brought into Tennessee territory on May 27, 1980. It is apparent from the dates listed above that there was one continuous period of over nine months, from November 1, 1981 through August 6, 1982, when the equipment was at anchor in McKellar Lake.

Testimony at trial indicated that there was a long period of high water at that time when no dredging operations were required.

The contract between appellee and the Corps of Engineers required that the equipment be maintained in such a state of readiness that it could be dispatched within five days to any site within the contracted territory. While at anchor, the generators on the *Lenel Bean* supplied the units with power at all times; and the engines were started at least once each week to assure that they were in operating condition.

Appellee concedes that the operation of its property within Tennessee territory during the tax years involved was clearly sufficient to subject it to the taxing power of the state. There is no claim of exemption under the Commerce Clause of the United States Constitution. Appellee relies solely upon the exemption contained in T.C.A. § 67–6–321 as follows:

> "There shall be exempt from sales tax the transfer, by any dealer in personal property, of railroad rolling stock or of vessels or barges of fifty (50) tons or over of displacement where the purchaser gives the seller an affidavit that such vessels or rolling stock are being purchased for use in interstate commerce or outside the state of Tennessee; and any such vessel or rolling stock shall also be exempt from use tax so long as it is being used in interstate commerce."

The principal case construing this statutory exemption is *T.L. Herbert & Sons, Inc. v. Woods*, 539 S.W.2d 28 (Tenn.1976).

In that case a towboat had been brought to the port of Nashville. The brief factual record before the Court, however, clearly showed that at all times the vessel was used in interstate commercial towing operations. There was no showing of any sustained period of idleness, and such facts as were adduced in summary judgment proceedings showed that at all times the vessel was used to transport cargo moving in interstate commerce.

Under those facts it was held that the vessel was exempt from the Tennessee use tax.

The facts of the present case are quite different. Appellee insists that when the vessel was actually engaged in dredging the river channel, it was engaged in interstate commerce. The Chancellor so held. As pointed out in the brief of appellant, there is substantial authority to the contrary. Numerous cases hold that dredging operations are local in nature and that they are not, in and of themselves, considered to be interstate commerce for the purposes of state and local taxation.

The facts of the present case are unusual, of course, in that the state line between Tennessee and Arkansas lies within the banks of the Mississippi River in parts of the contracted territory. The proof shows that at some times the dredge itself would be operating within Tennessee but that the designated spoil area at the end of the pipeline would lie in Arkansas. There is no question, however, that in the area north of Memphis both banks of the river now lie in Tennessee, and the entire operations in that area would take place within the boundaries of Tennessee.

One of the principal cases relied upon by appellant, holding that dredging operations are subject to local use taxes, is *Great Lakes Dredge & Dock Co. v. Department of Taxation and Finance*, 39 N.Y.2d 75, 346 N.E.2d 796, 382 N.Y.S.2d 958 (1976), *cert. denied*, 429 U.S. 832, 97 S.Ct. 95, 50 L.Ed.2d 97 (1976). *See also Atlantic Gulf & Pacific Co. v. Gerosa*, 16 N.Y.2d 1, 209 N.E.2d 86, 261 N.Y.S.2d 32 (1965), *appeal dismissed*, 382 U.S. 368, 86 S.Ct. 553, 15 L.Ed.2d 426 (1965); *Great Lakes Dredge & Dock Co. v. Norberg*, 117 R.I. 600, 369 A.2d 1101 (1977). A use tax was also upheld in the State of Florida in *Diversacon Industries, Inc. v. Graham*, 429 So.2d 1269 (Fla. App.1983).

Many of these cases deal with the constitutional power of a state to levy a use tax; but, as previously stated, no such issue is presented here. It is clear from the factual record that the equipment involved in this case was not at all times engaged in interstate operations, since during at least part of the time it was operating wholly within

the boundaries of Tennessee. We believe appellant correctly analogizes the dredging of a channel to the building of a road or bridge. Servicing an artery of interstate commerce is different from the actual transporting of goods through such an artery from the standpoint of state taxation.

Even if appellee's dredging operations could be classified as interstate commerce, however, obviously there were substantial periods of time during which the equipment was not so engaged but was at dock or storage in Shelby County.

T.C.A. § 67–6–211 provides that a tax is to be levied on

"... the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state."

The term "use" is defined at T.C.A. § 67–6–102(18) as follows:

"... the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of property in the regular course of business...."

The term "storage" is defined in T.C.A. § 67–6–102(16) as:

"... any keeping or retention in this state of tangible personal property for use or consumption in this state, or for any purpose other than sale at retail in the regular course of business...."

In our opinion the facts of this case show that the equipment of appellee was stored in Tennessee, within the meaning of these statutes, for substantial periods of time during each of the tax years in question.

The case, in our opinion, is controlled by the decision in *Vector Company v. Benson*, 491 S.W.2d 612 (Tenn.1973), where a company engaged in interstate commerce acquired a plane to use in business travel. Most of the flights of the plane were interstate. When not in operation, however, the plane was tied down or hangered at a Knoxville airport. A use tax assessment was sustained in that case and in the more recent case of *Service Merchandise Company, Inc. v. Jackson*, 735 S.W.2d 443 (Tenn.1987), released for publication at Nashville on the 17th day of August, 1987.

In the latter case a plane was purchased by the taxpayer in the State of Delaware for use in corporate business travel. It was delivered to a representative of the taxpayer in New Hampshire and then brought to Tennessee where it was hangered at Nashville. Routine maintenance was performed in Nashville, and the pilots were also based there. Flights generally began or ended in Nashville, but only a very small percentage of the flights were intrastate. No use tax or sales tax had been paid on the equipment to any other state.

In our opinion the Commissioner of Revenue correctly determined that appellee was liable for the Tennessee use tax under the facts shown in this case. It does appear, however, that after the suit was filed a determination was made that appellee had paid a use tax to the State of Louisiana on one of the smaller ancillary vessels. It is agreed by appellant that appellee is entitled to a credit for the amount of this tax, plus any attributable interest and penalty.

Other than for this adjustment, in our opinion the Chancellor erred in sustaining the claim for refund. The action is dismissed at the cost of appellee, with the exception of the adjustment admittedly due to appellee for previously paid use tax. The cause will be remanded to the trial court for determination of that amount and for any other proceedings which may be necessary.

BROCK, C.J., COOPER and DROWOTA, JJ., and MATHERNE, Special Justice, concur.